## OCTAVE A. POIRIER v. JOHN M. BRADFORD.[1]

November 29, 1912.

Nos. 17,957—(99).

**Sale of patented article.**

A corporation was organized to manufacture and sell certain farm implements covered by patents obtained by plaintiff, and to be obtained by him at the expense of the corporation; plaintiff was the manager, a stockholder and officer of the corporation; for the right to use such patents in the manufacture of such implements, plaintiff was monthly paid a certain sum in the nature of a royalty. *Held*, that the right to sell the articles so manufactured under plaintiff's patents was incident to the right to manufacture, and therefore all articles manufactured while that right existed, may, after such right ceased, be sold by the corporation or its successor in interest without let or hindrance from plaintiff.

[1] Reported in 138 N. W. 687.

Action in the district court for Ramsey county to enjoin defendant from infringement of a certain patent; to have defendant account for profits made in the sale of disc drills in infringement of letters patent and plaintiff's rights thereunder, and for $30,000 damages. The answer alleged that the court had no jurisdiction of the alleged cause of action set forth in the complaint, for the reason that all suits for infringement of patents are exclusively within the jurisdiction of the United States Circuit Court; set up the transfer of patent rights from plaintiff to the Poirier Manufacturing Company as the sole consideration paid by plaintiff for stock in that company; and alleged that company became insolvent and a sale of the drills to defendant by the trustee. The reply alleged that about October 1, 1907, another person was substituted as vice president and secretary of the manufacturing company and in accordance with the terms of the agreement mentioned in the opinion that act canceled and terminated the license of the company to manufacture and sell the machines, and the sale to defendant was made without the license or consent of plaintiff.

The case was tried before Kelly, J., who made findings and as conclusions of law found that defendant was the absolute owner of all the disc drills and unassembled parts of disc drills referred to in the complaint and answer, with full power to sell and dispose of the same as his own property. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Harry S. Locke,* for appellant.

*Denegre & McDermott,* for respondent.

HOLT, J.

Claiming that the defendant had in his possession 400 disc drills, and unassembled parts for about 800 more, made according to principles covered by certain letters patent owned by plaintiff, which drills defendant threatens to sell without the license or permission of plaintiff, this action is brought to enjoin defendant from selling or using the drills. The court made findings and ordered judgment for defendant. Plaintiff's motion for a new trial being denied, he appeals.

The here material and undisputed facts are that plaintiff owned

a patent for a drill shoe, which was thought valuable, and in 1902 he associated himself with some men who furnished the means and incorporated the Poirier Manufacturing Company, to manufacture and sell drills equipped with this shoe. Plaintiff became, and thereafter till October, 1907, continued to be, the secretary, vice president, and manager of the corporation. He received 250 shares of stock of the par value of $100 per share. Plaintiff was an inventor and, in addition to the shoe for grain drills, had also turned his attention to disc drills. Soon after the incorporation of the company he applied for several patents covering such drills, the company paid the fees and expenses for obtaining these patents, and under plaintiff's management manufactured and put on the market disc drills covered by patents subsequently issued upon his applications. The arrangement between plaintiff and the corporation is contained in this letter, written by the former to the latter:

"January, 1903.

"Poirier Mfg. Co.,
     "Gladstone, Minn.
"Gentlemen: —

"Confirming the conversation had with your Mr. Brooks last Saturday, relative to my certain inventions of improvements on grain drills, at which time it was agreed that the Poirier Mfg. Co. should pay all the expenses for labor in procuring models and furnish all the cash necessary for applications for U. S. patent and final government fees, that I should grant to said Poirier Mfg. Co. the right to use such inventions before and after the issuance of the U. S. patents, free of charge, for such time as my present interest in your company as stockholder and officer is retained, but that in no way shall the title or ownership of said inventions and contemplated patents pass from me to you, without further agreement and consideration.

"Respectfully yours,
          "O. A. Poirier."

Plaintiff received $150 per month from the corporation which he says was in the nature of royalties for the use of his patents. In

September, 1907, plaintiff, on account of some nervous trouble, became incapacitated for work. He was not paid anything thereafter, as he claims. No disc drills nor any parts of drills were ever manufactured thereafter. The drills and parts of drills now in defendant's possession were all completed by the corporation prior to September, 1907. The drills manufactured were evidently not a success, for the corporation, in August, 1908, was duly adjudicated a bankrupt and the said drills and parts of drills were in the bankruptcy proceeding duly sold to defendant herein. Plaintiff still retains his stock in the corporation, but ceased to be an officer in February, 1908.

The foregoing facts clearly indicate that there is no justice in plaintiff's claim. The defendant had succeeded to the rights of the corporation in this property, which was manufactured for the purpose of sale and use by the permission, license and direction of plaintiff. These implements and parts were so manufactured in the ordinary course of business, with the expectation that all would be sold in due time. The manufacture was undertaken solely for the purpose of realizing a profit from the sale of the article manufactured. So that the sale and use of the drill followed as an incident to the right to manufacture. In other words, plaintiff having granted the corporation, for a royalty paid monthly, the right to manufacture, according to his patents, these implements designed for sale and use, has no further interest in their disposition or use after they have been manufactured. Therefore the position of plaintiff is untenable that, if he chose to withdraw his license, the manufactured articles then on hand could not be sold. In Steam Cutter v. Sheldon, 10 Blatch. 1, the court says at page 8:

"If a party engaged exclusively in the construction of machines of various kinds, for sale to others, were to receive a license to manufacture a patented machine, for a consideration presently paid to the patentee, a construction which would deny him all opportunity to make the privilege of any value, forbidding his sale of the machines when manufactured, should be very clearly imported by the license, or the court would hold that the parties meant that he should derive

some benefit from the license, and not be left thereafter wholly dependent on the will of the patentee."

See also Gill v. United States, 160 U. S. 426, 40 L. ed. 480; Keyes v. Eureka Consolidated Mining Co. 158 U. S. 150, 39 L. ed. 929; Dable Grain Shovel Co. v. Flint, 137 U. S. 41, 34 L. ed. 618.

We do not think the facts of the present case bring it within the decision of Standard Sanitary Mnfg. Co. v. Arrott, 135 Fed. 750, cited and relied on by plaintiff. There the machine covered by the patent was built for the purpose of use in the manufacturing plant under a license given by the patentee, he being an officer and servant of the company operating the plant. It was held that a sale of the plant did not transfer to the new owner the right to use the machine. We doubt not the proposition that the owner of a patent may, in granting the right to use the same, place such limitations and restrictions as he may see fit. But clearly there was no intention in the instant case to restrict in any manner the sale or use of the articles manufactured by the corporation. And defendant is in no worse position than the corporation.

The views already expressed lead to an affirmance of the order, and render unnecessary a consideration of any other errors assigned, because, on the undisputed facts, the learned trial court's conclusion is manifestly right.

Order affirmed.