**WACO–PORTER CORPORATION, a Minnesota corporation, Plaintiff,**

v.

**TUBULAR STRUCTURES CORPORATION OF AMERICA, a California corporation, Shoring, Inc., a California Corporation, Mayco Equipment Co., a California corporation, McFadden-Shayne, Inc., a California corporation, and Marvin M. May, Defendants.**

No. 62–1658.

United States District Court
S. D. California,
Central Division.
July 31, 1963.

Irwin O. Spiegel, Beverly Hills, Cal., John Joseph Hall, Los Angeles, Cal., for plaintiff.

Roland E. Ginsburg, Beverly Hills, Cal., Herzig & Walsh and Albert M. Herzig, Los Angeles, Cal., Gerald H. Gottlieb, Beverly Hills, Cal., for defendants.

BYRNE, District Judge.

The first amended complaint in this action sets forth seven causes of action, one for an injunction and accounting of profits for patent infringement, one for damages for patent infringement, one for an injunction and accounting of profits for trademark infringement, one for damages for trademark infringement, one for breach of contract and license agreement, one for an injunction and accounting of profits for unfair competition, and one for damages for unfair competition.

By motion filed June 14, 1963, the plaintiff has moved this Court for a preliminary injunction enjoining the defendants and those participating with them: (1) from further acts of infringement of the plaintiff's patent No. 2,635,717, better known as "Speedlock," and plaintiff's patent No. 2,777,660, better known as "Speedset"; (2) from further acts of infringement of plaintiff's registered trade-marks "Waco" and "Speedlock"; and (3) from further acts of unfair competition by use of the same model numbers that identify and describe plaintiff's scaffolding and shoring equipment and product lines.

By motion filed June 3, 1963, the defendants have moved this Court for a preliminary injunction restraining the plaintiff from distributing and disseminating a certain notice regarding this action or any similar notice. The defendants' motion will be dealt with first.

■ The court in which a patent infringement action is brought has the power to enjoin a party to the action from falsely advising the trade with respect to the litigation and the steps taken or decisions made therein, all upon a motion made by another party in the same action. See Adjusta Co. v. Alma Mfg. Co., 36 F.2d 105 (S.D.N.Y.1929). See also Asbestos Shingle, Slate & Sheathing Co. v. H. W. Johns-Manville Co., 189 F. 611 (S.D.N.Y.1911).

■ Under the correct interpretation of the notice in question, the plaintiff does not really charge infringement in this notice, but plaintiff merely states that plaintiff has commenced this action for infringement of patents, trade-marks, breach of contract, and unfair competition, in which the complaint charges defendants with the infringement of the five named patents and other civil wrongs. With the exception of certain technical inaccuracies, the statements made in the notice are true statements, and anyone has the right to inform the trade truthfully about a court action he has brought against another and to state that in his complaint in the action he has charged the other with infringement. This is like reporting events; it amounts to a true statement of fact whether or not

the plaintiff prevails in the case and the allegations of the complaint are proved.

The first technical inaccuracy in the notice is the statement that plaintiff charges infringement of patent No. 2,-635,714 in this action. In truth, plaintiff charges infringement of 2,635,717, and there is no reference to a patent No. 2,-635,714 in the complaint. This technical inaccuracy is apparently the result of a clerical mistake.

■ The other technical inaccuracy in the notice is the statement that Waco-Porter charges the defendants with infringement of its registered trade-mark, "Speedset." In fact, the plaintiff's first amended complaint contains no cause of action for infringement of the mark "Speedset" nor any reference to a trade-mark, "Speedset." However, the court chooses to regard these technical inaccuracies as *de minimis* in view of the fact that the notice taken as a whole, is substantially accurate and counsel for plaintiff has assured the Court these inaccuracies will not be repeated.

The defendants' motion is denied.

With respect to the propriety of granting a preliminary injunction against patent infringement, the Ninth Circuit Court of Appeals has said: "Generally speaking, no preliminary injunction will be granted unless the patent is valid and infringed beyond question and the record conclusively proves the defense is a sham. * * * If validity has been adjudicated or there is shown to be acquiescence therein by the public and irreparable injury is proved the matter is generally in the discretion of the trial court. * * * But disputed questions of fact should be left for final hearing." Pacific Cage & Screen Co. v. Continental Cage Corp., 259 F.2d 87, 9th Cir. 1958).

■ In view of the presumption of validity and the fact that validity has not been disputed, the Court finds that patent No. 2,635,717 is valid.

The patent license agreement was terminated on July 1, 1962. Plaintiff has conceded that it does not seek to enjoin the sale or use by defendants of items purchased from the plaintiff. Plaintiff has also conceded that it does not seek to enjoin the sale or use by defendants of devices embodying the plaintiff's patent which were completely manufactured prior to July 1, 1962.

The license agreement provides that it is governed by Minnesota law. Minnesota has a substantial interest in providing the rules governing this agreement. Minnesota law controls this agreement. The extent to which the agreement of license provides a defense to an infringement action is a question of interpretation of that agreement.

In Poirier v. Bradford, 119 Minn. 475, 138 N.W. 687, 43 L.R.A.,N.S., 142 (1912); the court held that defendant could sell patented devices manufactured before withdrawal of a license and left on hand at the time of withdrawal of the license. Included in this category were disc drills which could be made of unassembled parts, which parts were manufactured before withdrawal of the license and left on hand at the time of withdrawal of the license. That Minnesota case is distinguishable from the instant case. In the Minnesota case, the *license to use the invention* was to last only as long as a certain state of affairs continued to exist. Such a provision limiting the duration of a *license to use the invention* is ambiguous in comparison with the definite and specific termination clause found in the license before this Court. The agreement in the instant action provides for termination of the agreement and the rights thereunder. Included in these rights were the rights to make, use and vend the patented devices. Therefore, the intention of the parties to the agreement herein was that the licensee could not sell devices after termination of the license, even though such devices may have been manufactured before termination. Furthermore, the requirement of a 90 days notice to terminate the license is probably for the purpose of allowing the licensee to have a limited period to wind up his operations with the patented devices, including the cessation of manufacture and the disposal of inventory.

This requirement indicates a probable intention that after the expiration of the 90 days of notice, there should not be any more sales of patented devices. Termination of the license terminated the right to use or vend any inventory of the patented devices.

The Court finds that defendants have sold devices embodying the patent No. 2,635,717 which were not completely manufactured by July 1, 1962. For the purpose of deciding this motion in view of the concessions by plaintiff, the Court regards the completion of manufacture as being constituted of the completion of final manufacture of the device embodied in plaintiff's patent No. 2,635,717, *as described therein*. Plaintiff has not conceded more than this.

■■ The agreement requiring defendants to use the plaintiff's trade-mark on the patented devices, including those made by defendants, does not by virtue of this requirement constitute patent misuse. Agreements providing that defendants and other distributors may not handle products competitive with those of the plaintiff would not violate the provisions of the Clayton Act, 15 U.S.C.A. § 14, unless the effect thereof may be to substantially lessen competition or to tend to create a monopoly in a line of commerce. It cannot be determined upon the present state of the record whether these restrictions have the effect of substantially lessening competition or of tending to create a monopoly in a line of commerce. Therefore, the defense of patent misuse is not established.

■ With respect to plaintiff's patent No. 2,635,717, the plaintiff's motion is granted to the following extent: The Court will issue a preliminary injunction enjoining and restraining defendants Tubular Structures Corporation of America, a corporation, Mayco, Inc., a corporation, May Equipment Company, a corporation, and Marvin M. May, and each of them, and their officers, agents, servants and employees, and all subsidiary, affiliated and related corporations, and all persons, firms and corporations partic-

ipating with them or any of them from any further acts of infringement by; manufacturing, assembling, distributing, selling, offering for sale, leasing, or using any devices or constructions embodying plaintiff's patent No. 2,635,717, better known as "Speedlock." The injunction will state that it does not enjoin the distribution, selling, offering for sale, leasing or using of any of said devices which have been *completely* manufactured by defendants by July 1, 1962. For purposes of this injunction the complete manufacture of said devices or constructions shall consist of the completion of final manufacture and assembling of the entire device and construction described in patent No. 2,635,717 *as described in that patent*. The injunction will state that it does not enjoin the repair or replacement of individual parts of said devices or constructions which become lost, broken, injured or worn out, and does not enjoin the said defendants from furnishing or supplying such repairs or replacements to others who have the lawful right to make such repairs or replacements. The injunction will state that it enjoins and restrains said defendants from the sale, offering for sale, leasing or distributing of a component of said devices or constructions, constituting a material part of the invention, and especially made or especially adapted for use in an infringement of said patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. The injunction will make no other reference to component parts.

■ With respect to plaintiff's patent No. 2,777,660, from the present record the Court finds this patent valid, but it does not find infringement of this patent.

■ With respect to the trade-marks, the Court finds them valid and infringed.

The Court will issue an injunction enjoining and restraining defendants Tubular Structures Corporation of America, a corporation, Mayco, Inc., a corporation, Mayco Equipment Company, a corporation, and Marvin M. May, and each of them, and their officers, agents, servants,

and employees, and all subsidiary, affiliated and related corporations, and all persons, firms, and corporations participating with them or any of them from any further acts of infringement by distributing, selling, offering for sale, leasing, or otherwise commercially using or trading upon plaintiff's registered trademarks "Waco" or "Speedlock" or any colorably similar imitation of either of them or in connection with scaffolding, shoring, and related construction equipment or on or in connection with advertising, selling or soliciting the sale of the same in or with trade catalogs, brochures or other published writings. The injunction will state that it does not enjoin defendants from the use of the name or mark "Mayco," in any way or in any connection whatsoever. The injunction will state that it does not enjoin defendants from any use of the plaintiff's registered trade-marks "Waco" or "Speedlock" in connection with products purchased from the plaintiff, or purchased or otherwise lawfully acquired from anyone who had the lawful right to sell them. The injunction will state that it does not enjoin defendants from any use of plaintiff's registered trade-marks "Waco" or "Speedlock" in connection with devices or constructions embodying the plaintiff's patents completely manufactured by July 1, 1962, by the defendants pursuant to the rights granted under the license agreement between plaintiff and defendants. For purposes of this injunction, the complete manufacture of said devices or constructions shall consist of the completion of final manufacture and assembling of the *entire* device and construction described in said patents, *as described in those patents.*

■■■ As for the model numbers used by plaintiff to identify plaintiff's scaffolding and related products, the Court finds that these model numbers have acquired a secondary meaning whereby the public associates them with the single source that is plaintiff. The Court finds that defendants have used said numbers without privilege, defense or license after July 1, 1962, and in such a way as to create a likelihood of customer confusion.

The Court will issue an injunction enjoining and restraining defendants Tubular Structures Corporation of America, a corporation, Mayco, Inc., a corporation, Mayco Equipment Company, a corporation, and Marvin May, and each of them, and their officers, agents, servants, and employees, and all subsidiary, affiliated and related corporations, and all persons, firms and corporations participating with them from any further acts of unfair competition by use of the same model numbers that identify and describe plaintiff's scaffolding and shoring equipment and product lines either in price lists, trade catalogs or brochures, or in any other written communications, soliciting trade or business. The injunction will state that it does not enjoin defendants from any use of the said model numbers in connection with products purchased from the plaintiff, or purchased or otherwise lawfully acquired from anyone who had the lawful right to sell them. The injunction will state that it does not enjoin defendants from any use of said model numbers in connection with devices or constructions embodying the plaintiff's patents completely manufactured by July 1, 1962, by the defendants pursuant to the rights granted under the license agreement between plaintiff and defendants. For purposes of this injunction, the complete manufacture of said devices or constructions shall consist of the completion of final manufacture and assembling of the entire device and construction described in said patents, *as described in those patents.*

In connection with all of the injunctive relief granted upon this motion, the Court has weighed the respective hardships on the parties, and this weighing has supported the granting of the injunctive relief granted herein. The findings will so state.

Counsel for the plaintiff are directed to prepare, serve and lodge two sets of formal orders, findings of fact, and conclusions of law, i. e., one set for each motion. The orders, findings of fact,

and conclusions of law shall be in accordance with the views expressed in this Memorandum of Decision and shall include the findings and conclusions indicated herein.