WACO–PORTER CORPORATION, a Minnesota corporation, Plaintiff,

v.

TUBULAR STRUCTURES CORPORATION OF AMERICA, a California corporation, Mayco, Inc., a California corporation, Mayco Equipment Co., a California corporation, Shoring, Inc., a California corporation, McFadden-Shayne, Inc., a California corporation, and Marvin M. May, Defendants.

No. 62–1658.

United States District Court
S. D. California,
Central Division.

Oct. 1, 1963.

Irwin O. Spiegel, Beverly Hills, Cal., John Joseph Hall, Los Angeles, Cal., for plaintiff.

Kendrick & Stolzy, Elwood S. Kendrick, Jack Corinblit, Los Angeles, Cal., Roland E. Ginsburg, Beverly Hills, Cal., for defendants.

BYRNE, District Judge.

Plaintiff instituted this action for patent infringement, trade-mark infringement, unfair competition, and breach of contract and license agreement. Plaintiff moved this Court for a preliminary injunction against patent infringement with respect to two patents, trade-mark infringement, and unfair competition.

By Memorandum of Decision filed on July 31, 1963, 220 F.Supp. 724, the Court indicated its decision to grant the motion of the plaintiff for a preliminary injunction with respect to one of the patents and not to grant the motion with re-

spect to the other patent. The Court indicated its decision to grant the preliminary injunction against trade-mark infringement and unfair competition. The patent with respect to which the Court decided to grant the preliminary injunction was patent No. 2,635,717 (sometimes referred to as the "Speedlock" patent).

On August 16, 1963, the plaintiff lodged Findings of Fact, Conclusions of Law and a Preliminary Injunction.

The defendants added new counsel, and on August 30, 1963, objected to the proposed findings and conclusions and preliminary injunction filed by plaintiff with respect to the granting of plaintiff's motion. Defendants also filed on August 30, 1963, a motion to modify the Court's Memorandum of Decision by changing its decision that the patent No. 2,635,717 is valid, and deleting directions for entry of a preliminary injunction with respect to this patent.

In the motion of defendants to modify the Court's Memorandum of Decision, filed August 30, 1963, the ground for modification is that the "Speedlock" patent, patent No. 2,635,717, is invalid in that it claims too much, i. e., it claims an old combination with an improvement of one part of the old combination, and the other old parts perform no new part in the combination.

Defendants contend that under Rule 60 of the Federal Rules of Civil Procedure, the Court has power to modify its Memorandum of Decision and also contend that the Court has inherent power to modify such Memorandum of Decision.

■ Since there has been no final order in this action, Rule 60 does not apply. The preliminary injunction proposed by the plaintiff is an interlocutory order, and not a final order. The Memorandum of Decision is not a final order.

■ However, it is clear that the Court has even more power to revise its interlocutory orders and decisions than its final orders, and such power over its interlocutory decisions is inherent. See In School District No. 5 v. Lundgren, 259 F.2d 101 (9th Cir., 1958). The question remains as to whether there is good cause to do so.

■ Validity of the patent was nowhere disputed in the documents filed up to the time of the hearing. Validity was not challenged at the hearing. Subsequently there was an answer filed contesting the validity of the patent. But this was too late. The Court was required to base its decision on the documents and evidence produced before and at the time of the hearing. Therefore, it is not inequitable to allow the injunction to be issued in the face of the present attack on *validity of the patent.*

In paragraph and objection Number V, defendants object to proposed Conclusion of Law 16, that defendants have not established patent or trademark misuse. This objection is very important, and in fact it is directed to an asserted error of law in the Court's holding on this point.

The authorities cited relate to patent misuse. The doctrine of trademark misuse has not been established to the satisfaction of this Court. In fact, it appears that there should not be a trademark misuse doctrine of the same type as the patent misuse doctrine, and where there are no unclean hands, the claim of trademark misuse should not constitute a defense. This is because the foundations of the claims are different. Patent law derives from the Constitution which states that the purpose thereof is to secure for a limited time to inventors the right to exclusive use of their inventions. On the other hand, trademark law under the federal statute is not limited by such Constitutional statements of purposes, for the federal trademark law is based on the Commerce clause.

Therefore, the Conclusion of Law 16 is correct insofar as it states that defendants have not established trademark misuse.

The serious objection is to the finding that defendants have not established patent misuse.

In the Court's original Memorandum of Decision, it was concluded that patent misuse was not established because it was not shown that the effect of certain restrictions was to tend to create a monopoly in a line of commerce or to substantially lessen competition in a line of commerce. Then it was concluded that since these effects or one of them was not established, it could not be said that the restrictions violated the Clayton Act, 15 U.S.C.A: § 14. It was concluded that patent misuse was not established because it was concluded that it was not established that the restrictions violated the Clayton Act, the pertinent federal antitrust statute.

██ Defendants contend that this holding was erroneous in law, for the reason that to establish the defense of patent misuse, it is not necessary to show a violation of the antitrust statute; it is sufficient merely to show certain restrictive agreements.

It appears that this position of defendants is well taken. The key case is Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 489, 62 S.Ct. 402, 86 L.Ed. 363 (1942).[1]

1. In the Salt case the court said: "The Court of Appeals for the Seventh Circuit reversed (the district court's dismissal based on patent misuse), 117 F.2d 968, because it thought that respondent's use of the patent was not shown to violate § 3 of the Clayton Act, 15 U.S.C. § 14, as it did not appear that the use of its patent substantially lessened competition or tended to create a monopoly in salt tablets. * * *

"The Clayton Act authorizes those injured by violations tending to monopoly to maintain suit for treble damages and for an injunction in appropriate cases. 15 U.S.C. §§ 1, 2, 14, 15, 26. But the present suit is for infringement of a patent. The question we must decide is not necessarily whether respondent has violated the Clayton Act, but whether a court of equity will lend its aid to protect the patent monopoly when respondent is using it as the effective means of restraining competition with its sale of an unpatented article.

"Both respondent's wholly owned subsidiary and the petitioner manufacture and sell salt tablets used and useful in the canning trade. The tablets have a particular configuration rendering them capable of convenient use in respondent's patent machines. Petitioner makes and leases to canners unpatented salt depositing machines, charged to infringe respondent's patent. For reasons we indicate later, nothing turns on the fact that petitioner also competes with respondent in the sale of the tablets, and we may assume for purposes of this case that petitioner is doing no more than making and leasing the alleged infringing machines. The principal business of respondent's subsidiary, from which its profits are derived, is the sale of salt tablets. In connection with this business, and as an adjunct to it, respondent leases its patented machines to commercial canners, some two hundred in all, under licenses to use the machines upon condition and with the agreement of the licensees that only the subsidiary's salt tablets be used with the leased machines.

"It thus appears that respondent is making use of its patent monopoly to restrain competition in the marketing of unpatented articles, salt tablets, for use with the patented machines, and is aiding in the creation of a limited monopoly in the tablets not within that granted by the patent. A patent operates to create and grant to the patentee an exclusive right to make, use and vend the particular device described and claimed in the patent. But a patent affords no immunity for a monopoly not within the grant * * *, and the use of it to suppress competition in the sale of an unpatented article may deprive the patentee of the aid of a court of equity to restrain an alleged infringement by one who is a competitor. It is the established rule that a patentee who has granted a license on condition that the patented invention be used by the licensee only with unpatented materials furnished by the licensor, may not restrain as a contributory infringer one who sells to the licensee like materials for like use * * *

"The grant to the inventor of the special privilege of a patent monopoly carries out a public policy adopted by the Constitution and laws of the United States, 'to promote the Progress of Science and useful Arts, by securing for limited Times to * * * Inventors the exclusive Right * * *' to their 'new and useful' inventions. United States Constitution, Art. I, * * * But the public policy which includes inventions within the granted monopoly excludes from it all that is not embraced in the invention. It equally forbids the use of

As for the restriction in the agreement between plaintiff and defendants which restricted competition by defendants, this restriction terminated on July 1, 1962; thus this improper restriction has been abandoned, and the consequences of the misuse of the patent have been dissipated. Therefore, that restriction is no longer a defense.

▮ As for the restrictions still in effect on other distributors, they constitute an attempt to restrain competition from the sale of non-patented items, and thus to extend the patent monopoly to unpatented articles. These restrictions constitute patent misuse, whether or not the defendant is a competitor of the plaintiff. See the Salt case, supra.

See also McCullough v. Kammerer Corp., 166 F.2d 759 (9th Cir., 1948), where the court held that a patent licensing agreement which gave licensee exclusive license to manufacture and use, but not to sell, patented oil well pipe cutter in the United States and its territories, but prevented both licensor and licensee from acquiring any other pipe cutter, is against public interest and precludes both licensor from recovering damages for infringement of patent.

However, the statements made by the court are broad enough to regard as patent misuse any agreement by which the licensor or patent owner requires the licensee not to compete with the patented device, and this would include a fortiori perhaps, the agreement requiring non-

the patent to secure an exclusive right or limited monopoly not granted by the Patent Office and which it is contrary to public policy to grant.

"It is a principle of general application that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest * * *.

"Undoubtedly 'equity does not demand that its suitors shall have led blameless lives,' * * * but additional considerations must be taken into account where maintenance of the suit concerns the public interest as well as the private interests of suitors. Where the patent is used as a means of restraining competition with the patentee's sale of an unpatented product, the successful prosecution of an infringement suit *even against one who is not a competitor* in such sale is a powerful aid to the maintenance of the attempted monopoly of the unpatented article, and is thus a contributing factor in thwarting the public policy underlying the grant of the patent. Maintenance and enlargement of the attempted monopoly of the unpatented article are dependent to some extent upon persuading the public of the validity of the patent, which the infringement suit is intended to establish. Equity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, *and should do so at least until* it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated. * * * (Emphasis added).

"The reasons for barring the prosecution of such a suit against one who is not a competitor with the patentee in the sale of the unpatented product are fundamentally the same as those which preclude an infringement suit against a licensee who has violated a condition of the license by using with the licensed machine a competing unpatented article, * * * or against a vendee of a patented or copyrighted article for violation of a condition for the maintenance of resale prices * * *. It is the adverse effect upon the public interest of a successful infringement suit, in conjunction with the patentee's course of conduct, which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent. Similarly equity will deny relief for infringement of a trademark where the plaintiff is misrepresenting to the public the nature of his product either by the trademark itself or by his label * * *. The patentee, like these other holders of an exclusive privilege granted in the furtherance of a public policy, may not claim protection of his grant by the courts where it is being used to subvert that policy.

"*It is unnecessary to decide whether respondent has violated the Clayton Act,* for we conclude that in any event the maintenance of the present suit to restrain petitioner's manufacture or sale of the alleged infringing machines is contrary to pubic policy and that the district court rightly dismissed the complaint for want of equity." (Emphasis added).

competition in general. Here, the agreement used by plaintiff Waco required and requires the other distributors not to compete with the products which the distributor is permitted to sell or rent by the distributorship agreement (and this includes the patented speedlock device, and another patented device); at least, this is the limited extent of the named devices in the franchise agreement form, primarily relied on here by the Court. But accessories of these are also included, and the agreement is amendable. In any event, it is clear that even a mere restriction on competition with the patented device by itself is sufficient to constitute patent misuse.

Thus, the restrictions on competition are patent misuse, *i. e.*, the restrictions on the other distributors still in effect. A showing of actual monopoly or tendency to create an actual monopoly in a line of commerce which is required to show a Clayton Act violation, 15 U.S.C.A. § 14, is not required to show patent misuse; it is sufficient to show the restrictive agreements which tend to suppress competition with or by non-patented articles. It is enough that the agreement in the abstract pushes in the direction of monopoly of non-patented articles; it is not necessary to show that it creates or tends to create an actual monopoly. The agreements themselves tell the tale.

■ The defense, once established, does not require any more balancing of the public interest; once patent misuse has been shown, the public interest already requires that the action for infringement of the patent must fall. This may seem unusual, for restrictions which do not violate the antitrust statute are regarded as against public policy by the Courts, and even this is done without regard to their reasonableness which was so relevant at common law. Nevertheless, this is the law because the Supreme Court has said so.

In view of the Court's re-drafted conclusion of law number 16, the preliminary injunction against infringement of the Speedlock patent will not be issued; this is in effect a modification of the Court's prior memorandum of decision. Pages 6, 7, 8, 9 and 10 of the proposed Findings of Fact and Conclusions of Law have been re-drafted by the Court and copies are enclosed for insertion in the copies retained by the parties.