AMERICAN PET MOTELS, INC., *et al.*, Plaintiffs-Appellants, *v.* CHICAGO VETERINARY MEDICAL ASSOCIATION *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 81-1217

Opinion filed May 11, 1982.—Rehearing denied June 3, 1982.

Ralph E. Brown, of Chicago (Walsh, Case, Coale, Brown & Burke, of counsel), for appellants.

William L. Arnold and Eric J. Liberman, both of Arnold and Hennessy, and Norman Bloch, all of Chicago, for appellee Chicago Veterinary Medical Association.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John T. Coleman, and Thomas A. Doyle, of counsel), for appellee M. A. Cosnow, D.V.M.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an action for libel and slander. The plaintiffs are American Pet Motels, Inc. (APM), and Robert Leeds and John Zevchak, two of APM's officers. The alleged slander was spoken by defendant M. A. Cosnow, a veterinarian. The alleged libel was published by defendant Chicago Veterinary Medical Association (CVMA). Plaintiffs also claim that defendants have tortiously interfered with plaintiffs' business relationships and have violated the Uniform Deceptive Trade Practices Act. Plaintiffs seek damages and injunctive relief. The trial court granted summary judgment for both defendants. Plaintiffs appeal.

APM operates a pet boarding service in Prairie View, Illinois. Defendant Cosnow is a veterinarian and member of the CVMA. On January 25, 1977, defendant Cosnow, acting in his capacity as chairman of the Animal Breeder-Dealer Liaison Committee, addressed the executive committee of the CVMA. Cosnow stated:

> "It has been reported to me that lay personnel at the American Pet Motels diagnosed and treated two cats for a parasite infection while they were being boarded at the facility."

One of Cosnow's functions as Animal Breeder-Dealer Liaison was to report to the CVMA instances of unauthorized practice of veterinary medicine.

The CVMA publishes a regular newsletter for distribution to its members. The newsletter contains, among other things, the minutes of meetings of the CVMA's executive committee. The February 1977, edition of the newsletter contained the minutes of the January 25, 1977, meeting of the executive committee. In a section titled "COMMITTEE REPORTS," the newsletter contained this passage:

> "ANIMAL BREEDER-DEALER LIAISON—Dr. Cosnow reported an incident concerning the American Pet Motel in which lay personnel diagnosed and treated a cat for a "parasite infection" while being boarded by that facility. Dr. Ver Meulen moved that Dr. Cosnow send a letter to Dr. Bromwell of the Illinois Dept. of Agr. concerning this incident, and that copies be sent to the American Pet Motel and to the states [sic] attorney. Motion seconded and carried."

Despite the executive committee's resolution to act on this report, no action was taken and no letters were sent.

Plaintiffs contend that Cosnow's statement is defamatory in that it impliedly charges plaintiffs with a violation of law (see Ill. Rev. Stat. 1977, ch. 111, par. 6924 (practice of veterinary medicine without a license is a Class B misdemeanor)) and prejudices APM in the conduct of its business. The trial court dismissed plaintiffs' complaint, relying on the innocent construction rule. (See *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148.) Plaintiffs contend on appeal that Cosnow's statement is not susceptible of an innocent construction and, alternatively, if the innocent construction rule does apply, it only renders the statement nonactionable as libel[1] *per se*. In plaintiffs' view, the statement remains actionable as libel *per quod*. Plaintiffs also contend that the innocent construction rule does not apply to causes of action under the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 311 *et seq.*) and to plaintiffs' claim of tortious interference with prospective advantage.

Words are libelous *per se* if they are "so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be, and is, dispensed with." (*Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 58, 223 N.E.2d 419.) Libel *per se* is often described by the categories that defined slander *per se* at common law. These four categories comprise words that impute (1) commission of a criminal offense, (2) infection with a communicable disease which would exclude one from society, (3) inability to perform or want of integrity in the discharge of duties of office or employment, and (4) words that prejudice a person in his profession or trade. (*Kirk v. Village of Hillcrest* (1975), 31 Ill. App. 3d 1063, 1065, 335 N.E.2d 535.) Words not falling within these categories may be actionable as libel *per quod* if they are actually defamatory and if specific damage is alleged. See *Kirk v. Village of Hillcrest* (1975), 31 Ill. App. 3d 1063, 1065.

● 1 The statements made by defendants Cosnow and CVMA are not libelous *per se*. Although the statements indirectly impute the commission of a crime (practicing veterinary medicine without a license, a Class B misdemeanor), this is not the sort of infamous crime that is *per se* defamatory. (See *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 160, 221 N.E.2d 516 (the offense charged must be indictable, involve moral turpitude, and be punishable by imprisonment).) While plaintiffs

---

[1] According to the accepted definitions of libel and slander, Cosnow's oral statement would be classified as slander and CVMA's printed communication would be classified as libel. Illinois law no longer recognizes any substantive differences between the two causes of action (see *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 159, 221 N.E.2d 516), and, for the sake of simplicity, Cosnow's and CVMA's statements are hereafter referred to as libel.

contend that the statements have prejudiced the conduct of their business, defendants' accusation nevertheless falls far short of the essential definition of libel *per se*. The words are simply not "so obviously and naturally hurtful" that damage to plaintiffs must be presumed.

The possibility of libel *per quod* remains. The recipients of defendants' communications were veterinarians, a group that could be expected to consider the alleged conduct (lay persons diagnosing and treating sick animals) reprehensible. If plaintiffs show that the statements caused specific pecuniary injury, they have laid the foundation for a claim of libel *per quod*. Defendants argue, however, that the innocent construction rule must be applied and that the statements can be read in a nondefamatory sense. Plaintiffs contend that the innocent construction rule does not apply to libel *per quod*.

Our research reveals no Illinois case that has considered this issue. Some Illinois cases contain language that, out of context, appears to support plaintiffs' position. (See, *e.g.*, *Springer v. Harwig* (1981), 94 Ill. App. 3d 281, 283, 418 N.E.2d 870 ("To determine whether language under scrutiny is actionable *per se*, * * * Illinois courts have consistently applied the innocent construction rule"); *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 341, 207 N.E.2d 482 ("a defamation can never be per se if the words themselves are capable of innocent construction").) Moreover, some Federal courts sitting in Illinois appear to have accepted the view that language rendered nonactionable *per se* by the innocent construction rule may nevertheless be actionable *per quod*. See *Fleck Bros. Co. v. Sullivan* (7th Cir. 1967), 385 F.2d 223, 225 (holding that an alleged libel was capable of an innocent construction but was nevertheless actionable upon proof of special damages).

This view, however, is difficult to reconcile with the sweeping language used by the supreme court to usher in the innocent construction rule:

> "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148.)

The rule says "nonactionable as a matter of law," not "nonactionable without proof of special damages." We also note that some Illinois opinions discuss the innocent construction rule as if it applies to libel *per quod*. See, *e.g.*, *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 743, 415 N.E.2d 434.

We conclude that the law in this regard is unsettled. While we have some doubt that defendants' statements can be construed innocently, we

also harbor some reservations concerning the innocent construction rule. (See generally Polelle, *The Guilt of the "Innocent Construction Rule" in Illinois Defamation Law*, 1981 N. Ill. U.L. Rev. 181.) We therefore elect to decide the instant appeal on an alternative ground. The defendants argued in the trial court that their statements were conditionally privileged as a matter of law. We agree, and on that basis we affirm the decision of the trial court.

■■ ■ The elements of conditional privilege are set forth in *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 150 N.E.2d 202. The defendant must act in good faith; there must be an interest to be protected or a duty to be upheld, and the statement must be limited in scope to that purpose; the publication must be on a proper occasion, in the proper manner, and limited to proper parties. (17 Ill. App. 2d 365, 377.) The facts of the instant case reveal that defendants' statements meet these standards. Cosnow and the CVMA have a legitimate interest in allegations of unauthorized veterinary practice. Cosnow had a duty to advise the CVMA of such reports. The statements were directed to a limited group of recipients: veterinarians who were members of the CVMA. The final element is good faith. A reviewing court can look at several sources to determine a speaker's good faith: the statement itself, the circumstances of its publication, and the relationship of the speaker and the hearers. (*Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 220, 408 N.E.2d 981.) Whether a libelous communication is conditionally privileged is a question of law for the court. (*Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 219.) We find that the defendants acted in good faith and the statements are protected by a qualified or conditional privilege.

Defendants, relying on our supreme court's opinion in *Colson v. Stieg* (1982), 89 Ill. 2d 205, 433 N.E.2d 246, assume that their qualified privilege is constitutionally based. We are not convinced that the court in *Colson* intended to elevate all qualified privilege to constitutional stature. In *Colson*, the court found that a university department chairman, in reporting to a tenure committee on a candidate for tenure, was protected by the first amendment privilege announced in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. In the *New York Times* case, the United States Supreme Court held that a public official cannot recover for libel unless he proves that the defamatory statement was made with "actual malice"—that is, knowledge that the statement was false or reckless disregard for the statements' truth or falsity. (376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) In *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975, a majority of the Supreme Court found the *New York Times* rule applicable to all public figures. (388 U.S. 130, 164, 170, 172, 18 L. Ed.

2d 1094, 1116, 1120, 1121, 87 S. Ct. 1975, 1996, 1999, 2000 (opinions of Warren, C.J., Black, J., and Brennan, J.).) In *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997, the Supreme Court distinguished between public figures and private individuals, noting that the former have greater access to the media and therefore a greater ability to rebut false charges. (418 U.S. 323, 344, 41 L. Ed. 2d 789, 807-08, 94 S. Ct. 2997, 3009.) Our supreme court noted this dichotomy in *Colson* and found that the plaintiff had an opportunity for communication with the committee that was the recipient of the allegedly defamatory statements. 89 Ill. 2d 205, 214.

■■ In the case at bar, plaintiffs had no such opportunity. We see no reason to extend the constitutional privilege beyond the limits drawn in *Colson.* We believe, however, that the analysis and result would be the same if the first amendment privilege applied. The constitutional privilege announced in the *New York Times* case is overcome by proof of "actual malice:" "knowledge that [the statement] was false or * * * reckless disregard of whether it was false or not." (376 U.S. 254, 280, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) The conditional privilege described in *Judge v. Rockford Memorial Hospital* requires, as its first element, good faith on the part of the speaker. (See *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 377.) We believe that any defendant harboring "*New York Times* malice" (knowledge or reckless disregard of falsity) also lacks good faith and, therefore, loses any conditional privilege he may have had under State law.

■■ Like the constitutional privilege, the conditional privilege that we find operable in the instant case is lost upon a showing of actual malice. (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 3d 365, 377.) The plaintiff has the burden of alleging and proving such malice. (See *Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 1052, 340 N.E.2d 539.) This burden is not satisfied by the bare allegation that a defendant acted maliciously and with knowledge of the falsity of the statement. (See *Colson v. Stieg* (1980), 86 Ill. App. 3d 993, 998, 408 N.E.2d 431, *aff'd* (1982), 89 Ill. 2d 205, 433 N.E.2d 246.) The plaintiff must allege facts from which actual malice may be inferred. (See *Colson v. Stieg* (1980), 86 Ill. App. 3d 993, 998; see also *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan* (1967), 37 Ill. 2d 546, 551, 229 N.E.2d 514.) Plaintiffs' complaint does not allege such facts and the record shows no basis for believing that such facts exist. We conclude that defendants' statements were conditionally privileged as a matter of law and that the trial court did not err in granting summary judgment for defendants on the defamation counts.

Plaintiffs' complaint also seeks injunctive relief pursuant to the Uni-

form Deceptive Trade Practices Act.[2] (Ill. Rev. Stat. 1977, ch. 121½, par. 311 *et seq.*) The problem in these counts is that plaintiffs have not alleged facts sufficient to show a need for injunctive relief. The allegedly false statement (accusing APM of unauthorized veterinary practice) was made once by Cosnow and repeated once by CVMA. Plaintiffs have shown no basis for assuming a threat of future misrepresentations. The trial court may not grant injunctive relief in the absence of a demonstrated need for such a measure. *Cf. Custom Business Systems, Inc. v. Boise Cascade Corp.* (1979), 68 Ill. App. 3d 50, 53, 385 N.E.2d 942 (no need for injunction absent a threat of future misrepresentation; dismissal of complaint affirmed); *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 275, 361 N.E.2d 815 (the harm to plaintiff had already occurred and was not likely to recur; injunction properly denied).

■■ Plaintiffs' complaint is also deficient in that it fails to show that defendants disparaged the quality of plaintiffs' services. (See *Crinkley v. Dow Jones & Co.* (1979), 67 Ill. App. 3d 869, 876, 385 N.E.2d 714.) Nothing in the statements complained of indicates that APM's business practices were substandard or harmful. Defendants charged plaintiffs with an unauthorized act but did not assert that the act was done negligently or that any animals in APM's care were harmed. We find that plaintiffs have failed to state a claim for relief under the Uniform Deceptive Trade Practices Act.

Plaintiffs also charge a tortious interference with prospective business advantage. The elements of this tort are set out in *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98. The plaintiff must have a reasonable expectancy of entering a valid business relationship and the defendant must purposely interfere and defeat this expectancy, thereby causing injury to the plaintiff. (90 Ill. App. 3d 547, 552.) Assuming, *arguendo*, that plaintiffs have sufficiently pleaded this tort, we find that the conditional privilege that renders the alleged defamation nonactionable also applies to these counts. Plaintiffs correctly argue that the tort of interference with prospective business advantage is distinct from the tort of defamation. Nevertheless, the logic of conditional privilege applies in the same way to both torts. In defamation law, a communication is held absolutely privileged when its propagation is so much in the public interest that the publisher should speak fully and fearlessly. (*Krumin v. Bruknes* (1930), 255 Ill. App. 503, 507.) A com-

---

[2] In their reply brief, plaintiffs suggest that they also seek money damages in these counts. A careful reading of the complaint shows only a demand for injunctive relief. In any event, damages are not available under the Uniform Deceptive Trade Practices Act (see *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 276, 361 N.E.2d 815), and there is in Illinois no common law cause of action for commercial disparagement. *National Educational Advertising Services, Inc. v. Cass* (N.D. Ill. 1977), 454 F. Supp. 71, 73.

munication is conditionally privileged when the public interest does not demand that the speaker be free from all responsibility for his words but should be protected if speaking honestly and for the public good. (*Krumin v. Bruknes* (1930), 255 Ill. App. 503, 507.) The import of these principles is plain: words that would otherwise be actionable are privileged when society has a need for the information.

■■ The same balancing of rights is evident in the law of commercial torts. The right to engage in a business relationship is not absolute; it must be exercised with regard for the rights of others, *e.g.*, the right to compete. (*Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 552.) In the case at bar, defendants had a legitimate interest in making the statements and those statements were conditionally privileged with respect to an action for defamation. We hold that the same privilege applies to an action for interference with prospective business advantage. *Cf. Gasbarro v. Lever Bros. Co.* (7th Cir. 1973), 490 F.2d 424, 426-27 (conditional privilege applied where both defamation and interference with business relationships were charged).

The trial court, relying on the innocent construction rule, granted summary judgment for defendants on all counts. Summary judgment on the counts charging defamation and interference with prospective business advantage was proper because of the defendants' conditional privilege. Summary judgment on the commercial disparagement counts was proper because plaintiffs failed to state a claim under the relevant statute and failed to show a need for injunctive relief. On these grounds, we affirm the decision of the trial court. *Cf. Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 567, 396 N.E.2d 1197 (summary judgment will be affirmed when justified by any reason appearing in the record).

Affirmed.

DOWNING and HARTMAN, JJ., concur.