**RICHARD WOLF MEDICAL INSTRUMENTS CORP., a Delaware corporation, and Richard Wolf GmbH, a corporation of the Federal Republic of Germany, Plaintiffs,**

**v.**

**Jacques DORY, an Alien Individual, and EDAP, S.A., an Alien Business Entity of the Nation of France, Defendants.**

**No. 87 C 1254.**

United States District Court,
N.D. Illinois, E.D.

Oct. 4, 1989.

Seymour Rothstein and Bradley J. Hulbert, Allegretti, Newitt & McAndrews, Chicago, Ill., for plaintiffs.

A. Sidney Katz and Suzanne Hines, Welsh & Katz, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This court has become the primary American setting for a world war between two inventors, Richard Wolf GmbH and Jacques Dory. Wolf is a West German Corporation which has an American subsidiary, Richard Wolf Medical Instruments Corporation. Wolf claims to have invented a device known as an extracorporeal lithotriptor, a device which Wolf has patented overseas. The lithotriptor is a machine which uses sound waves to pulverize kidney and gall stones in the human body without requiring surgery. Dory is a citizen of France, who assigned his own patent for an extracorporeal lithotriptor to EDAP, S.A., a French company. (The court will refer to Dory and EDAP collectively as "Dory.") Wolf has been fighting Dory throughout Europe over whether its device infringes on Dory's device, and vice versa. This court is one of the American theatres in the parties' conflict.

Wolf filed suit in this court in February 1987 seeking a declaratory judgment that its device did not infringe on Dory's United States Patent No. 4,617,931. Wolf also sought a declaration that Dory's patent was invalid, and damages on account of Dory's violations of the antitrust laws. In August 1987 Dory counterclaimed. Dory charged patent infringement in Count 1 of its Counterclaim; in Count 2, Dory contended that Wolf had violated the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, § 312(8) (1985), and had committed the common law torts of unfair competition and trade disparagement. Dory alleged that these wrongs resulted from a letter which Wolf's attorney sent to Dory's potential customers. The letter suggested that Dory had engaged in vexatious litigation and that Dory's patent was "unen-

forceable, invalid, and not infringed by Wolf." Dory alleged that Wolf knew these statements were false when they were made, and that Wolf continues to spread these falsehoods now.

Today this court will rule on two aspects of the parties' dispute.[1] Dory has asked this court to determine whether it has subject-matter jurisdiction over this suit. Dory questions this court's jurisdiction in light of a recent decision, *Eli Lilly and Co. v. Medtronic, Inc.*, 872 F.2d 402 (Fed.Cir. 1989). Wolf for its part has moved for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., on Count 2 of Dory's Counterclaim.

### Subject–Matter Jurisdiction

■ Dory's uncertainty as to this court's jurisdiction stems from recent congressional tinkering with this nation's patent laws. In the early 1980s, manufacturers of generic drugs anticipated the expiration of patents on numerous drugs. The manufacturers wished to produce these drugs as soon as they reverted to the public domain. As any conscientious manufacturer would recognize, however, one needs approval of a drug from the federal Food and Drug Administration before one can market a drug, generic or otherwise. See *U.S. v. Baxter Healthcare Corp.*, 712 F.Supp. 1352, 1356–57 (N.D.Ill.1989). Hoping to have obtained FDA approval prior to the expiration of the patents, the generic drug manufacturers began the experimental use studies, studies which the FDA requires, while the patents were still effective. Unfortunately, these manufacturers were faced with liability under the patent laws, as 35 U.S.C. § 271(a) (1982) prohibits unauthorized use of a patented invention. As the law stood in 1984, a generic drug manufacturer had to wait until after the patent on a drug expired before it could begin experimental studies on generic equivalents of the drug. See *Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 865 (Fed.Cir.1984).

---

**1.** There are numerous motions pending before the court, but the present motions take precedence.

Congress quickly remedied this situation. Upon the signing of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585, the Patent Code stated: "It shall not be an act of [patent] infringement to make, use, or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs." 35 U.S.C. § 271(e)(1) (1985 Supp.). In enacting this legislation, however, Congress did more than allow generic drug manufacturers to get a jump on development and marketing of their products. The Federal Circuit held in *Medtronic* that Congress granted this same privilege to makers of medical devices. Further, the *Medtronic* court rejected the argument that Congress intended this exemption to apply only to those who were seeking FDA approval of inventions on which someone else held a patent and had gained FDA approval. Instead, the court concluded that Congress enacted a broad exception to the Patent Code, the only limitation being the reasonable relationship of the uses of the patented drug or device to federal regulatory requirements. See *Medtronic*, 872 F.2d at 405–06.

How does all this cast this court's jurisdiction into doubt? At the time Wolf filed its request for declaratory relief, Wolf had obtained permission from the FDA to sell its lithotriptors to a number of American hospitals and universities for use in obtaining data required by the FDA. Wolf's application for FDA approval of its lithotriptor is still pending. Dory contends that in light of *Medtronic*, as long as Wolf continues to market its device *solely* for the purposes of collecting FDA-required data, Wolf is immune from liability for patent infringement. Dory thus argues that there is no case or controversy between it and Wolf, and thus this court lacks subject-matter jurisdiction under Article III of the Constitution. According to Dory, this court must dismiss this case without prejudice under Rule 12(h)(3), Fed.R.Civ.P.

Dory's argument is flawed in two respects. First, even assuming that *Medtronic* destroys this court's jurisdiction over Wolf's request for declaratory judgment, this court would still have jurisdiction over Wolf's antitrust claim. Dory purports that the case and controversy requirements for patent declaratory judgment suits and antitrust claims are the same, but the only cases which Dory musters in support of this argument are *Indium Corp. of America v. Semi–Alloys, Inc.*, 566 F.Supp. 1344 (N.D.N.Y.1983), and *Papst Motoren GmbH & Co. KG v. Kanematsu–Goshu*, 629 F.Supp. 864 (S.D.N.Y. 1986). In *Indium*, the court dismissed an antitrust claim that formed part of a patent dispute, after dismissing the patent claims for lack of a controversy. Had Dory read *Indium* closer, it would have noted that the *Indium* court dismissed the plaintiff's antitrust claims not for lack of controversy, but for failure to state a claim upon which the court could grant relief. See *Indium*, 566 F.Supp. at 1354. As for *Papst*, the question there was whether the federal courts had jurisdiction over the extraterritorial acts of a defendant, where the plaintiff had not alleged that those acts had an anticompetitive effect upon American commerce. See *Papst*, 629 F.Supp. at 868–69.[2] By contrast, all of the anticompetitive activities alleged by Wolf occurred in and affect the American market. See Second Amended Complaint, ¶¶ 29–30, 34–35. The controversy over Dory's antitrust violations is alive and kicking.

So is the controversy over the Dory patent.

The case or controversy requirement for a patent invalidity declaratory judgment action requires the presence of two elements. First, the defendant in such an

---

**2.** Dory cites *Papst* for the additional proposition that one cannot sue under the antitrust laws without there being a "relevant market." Dory argues that absent FDA approval for either its own or Wolf's device, there can be no market. Were this true, however, that would not mean that this court lacks subject-matter jurisdiction—only that Wolf has failed to state a claim upon which this court can grant relief. This court has jurisdiction over a federal claim regardless of its legal sufficiency, as long as it is not frivolous or malicious. See *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

action must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that it will face suit if it commences or continues the activity in question. Next, the plaintiff ... must have actually produced the accused device or have actually prepared to produce such a device. *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1398–99 (Fed.Cir.1984) (citations omitted). See also *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988).

In its counterclaim for patent infringement, Dory conceded that Wolf has produced a device. The issue which separates the parties is whether Dory has engaged in conduct that has created in Wolf a reasonable apprehension that it will face suit if it continues to push its device in the American market. The Federal Circuit in *Arrowhead* noted that the focus of this part of the test for case/controversy is the defendant's conduct:

> [I]t must be such as to indicate defendant's intent to enforce its patent. If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy.... When the defendant's conduct ... falls short of an express charge, one must consider the "totality of the circumstances" in determining whether that conduct meets the first prong of the test. If the circumstances warrant, a reasonable apprehension may be found in the absence of *any* communication from defendant to plaintiff. If, on the other hand, defendant has done nothing but obtain a patent, there can be no basis for the required apprehension, a rule that protects quiescent patent owners against unwarranted litigation.

*Arrowhead*, 846 F.2d at 736 (citations omitted; emphasis in original).

Dory cannot deny that it has charged Wolf with infringement. Dory even has moved for a preliminary injunction against Wolf. Wolf certainly would be much happier if it did not have to litigate Dory's

claims against it; this court (as well as the magistrate assigned to this case) has many cases to which the court could attend in the place of this one. But Dory is the master of its litigation strategy. Until Dory ceases its threat of an infringement suit,[3] one cannot say that this case lacks actual controversy.

## Judgment on the Pleadings

The court now turns to Wolf's motion for judgment on the pleadings on Count 2 of Dory's Counterclaim. The Seventh Circuit has noted that a motion under Rule 12(c) is like one for summary judgment, as it is directed towards a final judgment on the merits. The court must accept as true all of the facts alleged in Count 2, and draw all reasonable inferences from them in Dory's favor. If upon considering these allegations there appears no material issue of fact, and Wolf is entitled to judgment as a matter of law, then the court must enter judgment in favor of Wolf. Otherwise, the court must deny the motion. See *Republic Steel Corp. v. Penn. Engineering Corp.*, 785 F.2d 174, 178 n. 2 (7th Cir.1986).

■ Taking all of the allegations as true, and drawing all inferences from them in Dory's favor, the court holds that Wolf is entitled to judgment as a matter of law on all three theories put forth in Count 2. Section 312(8) of the Illinois Deceptive Trade Practices Act defines as a deceptive trade practice disparagement of the "goods, services or business of another by false or misleading misrepresentation of fact." The focus of this section is the good, service, or business itself; an attack upon one's business rival, no matter how malicious, which does not touch upon the rival's goods, services, or his business does not state a claim under this portion of the Act. See *Allcare, Inc. v. Bork*, 176 Ill. App.3d 993, 999–1001, 126 Ill.Dec. 406, 410–11, 531 N.E.2d 1033, 1037–38 (1988); *Amer. Pet Motels v. Chicago Vet. Med. Ass'n*, 106 Ill.App.3d 626, 633, 62 Ill.Dec. 325, 330–31, 435 N.E.2d 1297, 1302–03 (1982); *Crinkley v. Dow Jones & Co.*, 67 Ill.App.3d 869,

---

**3.** Mere dismissal of Dory's counterclaims might not be enough to accomplish peace between the parties, as *Arrowhead* notes. The court would have to look at the totality of the circumstances.

876–77, 24 Ill.Dec. 573, 578–79, 385 N.E.2d 714, 719–20 (1978).

None of the false statements contained in a letter which Wolf sent to Dory's customers touches upon the quality of Dory's products. The letter does not state that Dory's devices do not operate properly, or that they are harmful. Rather, the letter accuses Dory of being a vexatious litigant and a patent infringer. The court cannot infer from these attacks that Dory's products are poor.

Dory's claim under the Act is weaker than that of the unsuccessful plaintiff in *Amer. Pet Motels*. There the plaintiff sued a veterinary medical association for accusing him of having practiced veterinary medicine without a license. The court found no disparagement of the plaintiff's services. What is curious about this case is that the purpose of licensing medicine is to regulate the quality of care: If ever there was a case of indirect attack on a person's services, *Amer. Pet Motels* presented it. Nevertheless, the court found that there was no trade disparagement. By contrast, the purpose of the patent laws is not to regulate the quality of inventions, but merely to foster them. If the Illinois courts could not find trade disparagement in *Amer. Pet Motels*, certainly they could not find it here.

Dory's common law claims are similarly flawed.[4] Before the court explains why, there is one preliminary matter: which law governs Count 2. Dory relies mostly on Illinois law,[5] but to hedge it argues in the alternative that federal common law governs this dispute. Dory musters no support for the latter position. The best it does is cite federal cases—many of them ancient, which is fatal to Dory's argument—where the courts suggest that some sort of right to prevent dissemination of false statements exists. Dory presumes that this right exists under federal law.

Dory first argues that the federal courts have the power to enjoin a party in a patent infringement suit from falsely advising the trade as to the status of the litigation. The federal courts may have some power in this respect, but it is not as great as Dory suggests. One case upon which Dory relies, *Waco–Porter Corporation v. Tubular Structures Corp.*, 220 F.Supp. 724, modified in unrelated part, 222 F.Supp. 332 (S.D.Cal.1963), demonstrates this. In *Waco–Porter*, the court held that on motion of a party a federal court has the inherent power to enjoin a party from falsely advertising to the trade during the pendency of the litigation. The court cited one decision which is to the same effect, *Adjusta Co. v. Alma Mfg. Co.*, 36 F.2d 105 (S.D.N.Y.1929), and Judge Learned Hand's discussion in *Asbestos Shingle, S. & S. Co. v. H.W. Johns–Manville Co.*, 189 F. 611 (C.C.N.Y.1911). The thrust of Judge Hand's argument is that in some cases, a court must enjoin certain conduct to protect its decrees or the litigation itself. The Judge does suggest that "trade injury is actionable when it arises from actual misstatements," *id.* at 615, but it is important to remember when Judge Hand was writing: 1911, over twenty-five years before the landmark decision of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). At the time the Judge wrote, it was assumed that federal common law governed all cases in federal court, which is not the case today. This court thus does not read Judge Hand's opinion for the proposition urged by Dory, that federal common law governs its dispute with Wolf.

The other case upon which Dory relies, *Al–Fab Aluminum Fabricators, Inc. v. Wagner*, 220 F.Supp. 715 (N.D.Ill.1963), does not support its view of the governing law either. The *Al–Fab* court held that a party to a trademark infringement action could bring a claim for his opponent's mis-

---

4. While Dory alleges that Wolf has competed unfairly and disparaged it unlawfully, it concedes in its brief in opposition to Wolf's motion that the source of Wolf's unfair competition is its tactic of disparagement. Hence, the two claims are one and the same.

5. And Wolf responds to it. The court will treat this as a stipulation by the parties that if any state's common law controls Count 2, it is Illinois's. See *City of Clinton, Ill. v. Moffitt*, 812 F.2d 341, 342 (7th Cir.1987) (parties may stipulate to applicable law, within broad limits).

representations about the litigation, but most of the cases cited by the court were from Illinois—suggesting that the court believed that state law governed the claim. See *id.* at 717–18. The court did refer to two federal cases which imply a federal cause of action, see *Warren Featherbone Co. v. Landauer*, 151 F. 130 (C.C.Wisc. 1903), and *United Electric Co. v. Creamery Package Mfg. Co.*, 203 F. 53 (E.D.Wisc. 1913), but their pronouncements too are questionable in light of *Erie* and its progeny.

■ Thus, federal law does not govern whatever *claims* Dory has from commercial disparagement.[6] Courts in this post-*Erie* era typically apply state law to such claims. See, for example, *Chromium Industries v. Mirror Polishing & Plating*, 448 F.Supp. 544 (N.D.Ill.1978) (applying Illinois law). Congress has expressly given the federal courts the power to entertain them. See 28 U.S.C. § 1338(b) (1982); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1201 (7th Cir. 1987) (pendent state claims in copyright case).

■ With this in mind, the court now turns to the merits of Dory's common law claims. Dory rightly suggests that the Illinois courts still recognize the common law tort of commercial or trade disparagement. Favorable discussions of it appear in numerous cases. See, for example, *Crinkley*, 67 Ill.App.3d at 876–77, 24 Ill.Dec. 573, 385 N.E.2d 714 (noting that the Deceptive Trade Practices Act substantially embodies common law tort of commercial disparagement, but not suggesting that the Act eliminated the tort); *Streif v. Bovinette*, 88 Ill.App.3d 1079, 1082, 44 Ill.Dec. 372, 375, 411 N.E.2d 341, 344 (1980); *Allcare*, 176 Ill.App.3d at 1000, 126 Ill.Dec. 406, 531 N.E.2d 1033 (recognizing cause of action). See also Prefatory Illinois Notes, Ill.Ann. Stat. ch. 121½, ¶¶ 311 et seq. (Smith–Hurd 1989 Supp.) (Act complements, but does not eliminate, common law remedies). *Amer. Pet Motels* suggests in dicta that the Act

eliminated the tort, see 106 Ill.App.3d at 633 n. 2, 62 Ill.Dec. 325, 435 N.E.2d 1297, but this view is based on an unexplained holding in *National Educational Advertising v. Cass Student*, 454 F.Supp. 71, 73 (N.D.Ill.1977). This court will follow the reasoning of the majority of Illinois decisions that the common law tort of commercial disparagement exists in Illinois, notwithstanding the Act.

This said, Wolf is still entitled to judgment. The Illinois cases cited earlier uniformly hold that one of the elements of the tort of commercial disparagement too is disparagement of the goods, services, or business of the plaintiff. Mere attacks on the principals of a business do not give rise to a claim for commercial disparagement. Because all that Wolf is alleged to have done is attack Dory, and not its products, Dory has failed to state a claim for commercial disparagement.

## SUMMARY

The court denies Dory's motion to dismiss for lack of subject-matter jurisdiction. The court enters judgment in favor of Wolf and against Dory on Count 2 of Dory's Counterclaim.

---

6. The parties are free, however, to move for an injunction similar to that sought in

*Waco–Porter.*