MANAGEMENT SERVICES OF ILLI-
 NOIS, INC., an Illinois Corporation,
 d/b/a Management Services, Inc., Plain-
 tiff,

v.

HEALTH MANAGEMENT SYSTEMS,
 INC., a New York corporation, and
 Victor Kugajevsky, Defendants.

No. 95–3276.

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 6, 1995.

290

Thomas Schanzle–Haskins, Springfield, IL, for plaintiff.

Stephen R. Kaufmann, Springfield, IL, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Libel *per se?*

There are two tests.

Plaintiff passes the first, fails the second.

But let us examine the facts, discuss the law, and then give the reasons for our finding.

### I. Background

Plaintiff Management Services of Illinois, Inc. ("MSI"), is an Illinois corporation. Since 1990, MSI has contracted with the Illinois Department of Public Aid ("IDPA") to provide services to aid in the recovery of certain funds expended by IDPA under Title XIX of the Social Security Act from various insurance companies. In 1990, MSI subcontracted with Defendant Health Management Systems, Inc. ("HMS"), a New York corporation, to provide services in support of MSI's contract with IDPA. Defendant Victor Kugajevsky is vice president of HMS.

As a subcontractor, HMS was to submit IDPA claims to various insurance companies for reimbursement to IDPA. When the claims were allowed, checks from the insurance company made payable to IDPA were sent to HMS. HMS was then required to submit the checks to MSI. Once the checks were received by MSI, MSI would deliver the checks to IDPA. Once IDPA received the checks, it paid MSI for MSI's services under the contract. MSI would then pay HMS for its services under the subcontract.

The complaint alleges that IDPA, MSI, and HMS acknowledged that timely transmission of the reimbursement checks from HMS to MSI was essential to effectuate the purpose of the contract. The failure to transmit the checks in a timely manner resulted in the expiration of the checks which then had to be reissued by the insurance carrier. Consequently, as a result of the delay caused by the reissuance of the checks, IDPA's use of the funds was postponed. Similarly, since MSI did not receive payment for its services until IDPA received the reimbursement from the insurance companies, the delay caused by the reissuance of the funds also delayed payment to MSI. The complaint alleges that HMS and Kugajevsky were aware of the problems resulting from the delayed submission of the checks to MSI and that the submission of the checks in a timely manner was necessary to fulfill its obligations under the subcontract between MSI and HMS.

Due to HMS's continued failure to submit the checks to MSI in a timely manner, MSI cancelled its subcontract with HMS in October of 1994. Following the cancellation of the subcontract, HMS attempted to contract directly with IDPA for the services performed by MSI under its contract with IDPA. In May of 1995, HMS sent to the Director of IDPA, Robert W. Wright, a letter which stated, in pertinent part:

> While it appears our contract with MSI is terminated, we have the ability to generate, processed and billed or ready to bill claims currently in hand, revenues for IDPA of approximately $2.6 to $3.7 million.
>
> * * * * * *

> Equally of a concern is that we have in the pipeline recoveries of approximately $2.6 to $3.7 million. MSI has instructed us to return this to insurance carriers.

The complaint alleges that the above statements from HMS to Director Wright were false and Defendants knew the statements were false.

After the cancellation of the subcontract, HMS was to continue forwarding the reimbursement checks to MSI for all claims submitted to the insurance companies prior to the cancellation of the subcontract. HMS received a letter from IDPA urging HMS to send MSI the reimbursement checks as quickly as possible. In response to that letter, in July of 1995, HMS sent a letter to IDPA's Chief of Collections, Curt Fleming. That letter stated, in pertinent part:

> Recovery checks in the approximate amount of $350,000 have been forwarded to MSI and a corresponding invoice will be sent to MSI.

The complaint alleges that the above statement from HMS to Chief of Collections Fleming was false and Defendants knew the statement was false.

We now address the motion to dismiss.

## II. Legal Standard—Motion to Dismiss

 In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true." *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). "In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Id.* Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

## III. Discussion

MSI initiates this action, claiming: count I, the statement in the May 1995 letter to Director Wright was false and imputed to MSI the inability to perform under the terms of the contract with IDPA and falsely attacked the integrity of MSI, thus, the writing was libelous *per se;* count 2, the statement in the July 1995 letter to Chief of Collections Fleming was false and imputed to MSI the inability to perform under the terms of the contract with IDPA and falsely attacked the integrity of MSI, thus, the writing was libelous *per se;* and count III, as a result of HMS's failure to transmit the checks in a timely manner to MSI, it breached the subcontract between MSI and HMS.

### A. Libel *Per Se*

First test.

 The determination as to whether a writing qualifies as libel *per se* is a question of law to be decided by the trial court. *Quilici v. Second Amendment Foundation,* 769 F.2d 414, 417 (7th Cir.1985). In order to state a claim for libel *per se* for which special damages will be presumed when the plaintiff is a corporation,[1] the writing must *first* "assail the corporation's financial or business methods or accuse it of fraud or mismanagement." *American Int'l Hosp. v. Chicago Tribune,* 136 Ill.App.3d 1019, 91 Ill.Dec. 479, 483, 483 N.E.2d 965, 969 (1st Dist.1985); *Riddell, Inc. v. BSN Corp.,* No. 90–C–990, 1990 WL 133517, *1, 1990 LEXIS 12010, *3 (N.D.Ill. Sept. 12, 1990).[2]

Here, we conclude that the false written statements in the May and July 1995 letters from HMS to IDPA pass the first test in that both written statements attack MSI's business methods and its integrity to perform pursuant to the contract between IDPA and MSI. That is, the written statements were made to high ranking individuals of IDPA who presumably had knowledge of the contract between IDPA and MSI. The timely submission of the checks from MSI was important to IDPA. Indeed, the faster IDPA received the money from the insurance companies via MSI, the faster IDPA could put those funds to use.

The false written statement in the May 1995 letter declared that HMS had recovered for IDPA approximately $2.6 to $3.7 million of funds to which MSI instructed HMS to return to the insurance companies. That assertion created the appearance that MSI, by asking HMS to return IDPA's funds to the insurance companies, was postponing or delaying the delivery of the checks or funds to IDPA. Of course, since immediate receipt of the funds was important to IDPA, the false statement reflected unfavorably upon MSI. Specifically, the statement generated the impression that MSI was not acting with IDPA's best interest in mind and was likely breaching its contract with IDPA.

The July 1995 letter had a similar impact. By falsely stating that HMS sent MSI $350,-000, HMS created the appearance that MSI was not submitting the funds to IDPA in a timely manner. As discussed previously, once the funds were sent to MSI, MSI would then send them to IDPA. Thus, if the funds were in fact sent from HMS to MSI and IDPA had not received those funds yet (as the letter implies), then the appearance is created that MSI is not processing those funds in a timely manner. Once again, the statement generated the notion that MSI was not acting with IDPA's best interest in mind and, perhaps, was breaching its contract with IDPA.

In summary, because the false written statements—by creating an unfavorable impression of MSI's business methods and practices—essentially attacked MSI's integri-

---

1. Incidentally, the State of Illinois no longer recognizes a distinction between libel and slander. *Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 267 (7th Cir.1983).

2. When the plaintiff is not a corporation, the writing must fall into one of four categories: (1) words which impute the commission of a criminal offense; (2) words which impute infection with a loathsome communicable disease; (3) words which impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words which prejudice a party, or impute lack of ability, in his or her trade, profession, or business. *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill.2d 1, 180 Ill. Dec. 307, 312, 607 N.E.2d 201, 206 (1992).

ty and ability to perform under the contract with IDPA, we believe the statements pass the first test, *i.e.,* they assailed MSI's business methods in the eyes of IDPA.

Second test.

■■■ Now, however, we proceed to the second test. Merely because a false statement "wrongfully" attacks a corporation's business methods does not mean that the corporation has an actionable libel *per se* claim. *See Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 268 (7th Cir.1983) ("And even a statement that falls within one of those categories is not necessarily slander *per se* anymore."); *accord, Babb v. Minder,* 806 F.2d 749, 757 (7th Cir. 1986) (" '[A] statement to be [defamatory] *per se* must be *not only* within the four categories....' ") (emphasis ours); *Quilici v. Second Amendment Foundation,* 769 F.2d 414, 417 (7th Cir.1985) ("[E]ven a statement which fits within one of these categories is not necessarily libelous *per se.*"); *Int'l Serv. Assoc., Inc. v. Arco Management of Washington, D.C., Inc.,* 94–C–1807, 1994 WL 583302, *3, 1994 LEXIS 15025, *13 (N.D.Ill. Oct. 21, 1994); *Ribando v. United Airlines, Inc.,* No. 90–C–5904, 1993 WL 816502, LEXIS 13978, *21 (N.D.Ill. Oct. 1, 1993); *American Pet Motels v. Chicago Veterinary Medical Ass'n,* 106 Ill.App.3d 626, 62 Ill.Dec. 325, 328, 435 N.E.2d 1297, 1300 (1st Dist.1982); *Erickson v. Aetna Life Casualty Co.,* 127 Ill.App.3d 753, 83 Ill.Dec. 72, 78, 469 N.E.2d 679, 685 (2nd Dist.1984). Indeed, as stressed by Chief Judge Posner in *Brown & Williamson Tobacco Corp.,* once the first test is passed, "[t]he statement must be sufficiently defamatory to justify an award of damages without proof of special damages." *Brown & Williamson Tobacco Corp.,* 713 F.2d at 268.

■■■ Before analyzing the second test, it is essential to understand the reasoning as to why damages are presumed when *per se* defamation is at issue. The reason damages are presumed when forms of defamation are actionable *per se* is because the defendant's conduct is considered so severe that serious injury to the plaintiff's reputation is "virtually certain." *Carey v. Piphus,* 435 U.S. 247, 262, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1978). Due to the serious injury to reputa-

tion as a result of the egregious conduct, the presumed damages doctrine recognizes that such an injury is extremely difficult to prove; thus, there is little reason to require proof of actual damages as a result of the serious reputational injury. *Id.* Accordingly, although a false statement may fall within one of the four defamation *per se* categories, *see* footnote 2, *supra.,* or in the instant case, it may attack the corporation's business methods; the court must still inquire as to whether the defendant's conduct was so severe that serious reputational injury will be presumed without proof of special damages. *See Brown & Williamson Tobacco Corp.,* 713 F.2d at 268 ("[T]he statement must be sufficiently defamatory to justify an award of damages without proof of actual damage."). Or, in the words of the Illinois courts, the statement must be "so obviously and naturally hurtful" to the plaintiff's reputation "that proof of [its] injurious character can be, and is, dispensed with." *Id.* (quoting *Reed v. Albanese,* 78 Ill.App.2d 53, 223 N.E.2d 419, 422 (1st Dist.1966)); *see Kolegas,* 180 Ill.Dec. at 312, 607 N.E.2d at 206 ("A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in eyes of the community or deters third persons from associating with him.").

Thus, the Court asks: was HMS's conduct so severe or obviously and naturally harmful to MSI that serious reputational injury was highly likely or virtually certain such that proof of actual damage is justifiably dispensed with?

Answer: No.

We must keep this issue in perspective. The false statements contained within the letters were sent to one entity—IDPA. Thus, the only possible reputational injury or prejudice to MSI resulting from the false statements would have been in the eyes of IDPA. So, is damage to MSI's reputation based on IDPA's resulting opinion likely or virtually certain? No. To the contrary, at the time the statements were made, the possibility of damage to MSI's reputation was slim to none. Indeed, MSI and IDPA had an ongoing business relationship for the past 4

to 5 years. Certainly, IDPA is not going to take the word of a third party (*i.e.*, HMS) without investigating the allegations. That would not be smart business.

Indeed, the most predictable result is that IDPA contacted MSI shortly after the false statements were made and clarified the matter. Thus, perhaps MSI's reputation was damaged temporarily or momentarily until the matter was resolved shortly thereafter. But, even that is not likely. Again, as discussed above, based on the ongoing business relationship between MSI and IDPA, certainly IDPA was not going to jump to any conclusions regarding MSI's business integrity without investigating or confirming HMS's allegations. Thus, the possibility that MSI would be prejudiced in its business relationship with IDPA as a result of HMS's conduct was very slim. Therefore, this is not the type of case where serious reputational damages were virtually certain and thus can be presumed. *See Brown & Williamson Tobacco Corp.*, 713 F.2d at 269 ("The statement may have prejudiced the plaintiff in its business but the likely prejudice was too slight to dispense with proof of special damage.") (discussing, *American Pet Motels*, 62 Ill.Dec. at 328, 435 N.E.2d at 1300); *International Serv. Assoc., Inc.*, 1994 WL 583302 at *3, 1994 LEXIS 15025 at *13) ("[E]ven if the statements in these letters do fall into any of the *per se* categories, this Court does not find them sufficiently defamatory on their face to warrant an award of damages without proof

of special damages.");[3] *American Pet Motels*, 62 Ill.Dec. at 328, 435 N.E.2d at 1300 ("While plaintiffs contend that the statements have prejudiced the conduct of their business, defendants' accusation nevertheless falls far short of the essential definition of libel *per se*. The words are simply not so obviously and naturally hurtful that damage to plaintiffs must be presumed.").[4]

Although MSI does not have a claim for libel *per se*, "[w]ords which are not defamatory *per se* may still be actionable if they are defamatory and if special damages are shown." *Babb v. Minder*, 806 F.2d at 757 (7th Cir.1986). MSI, however, does not adequately plead special or actual damages. Pursuant to Fed.R.Civ.P. 9(g), special damages must be "specifically stated." *See Brown & Williamson Tobacco Corp.*, 713 F.2d at 270. Here, MSI's sole statement regarding special damages is found in its prayer for relief where it asks for "the amount of actual damages to be proven at trial." MSI, however, fails to specifically state what those damages are or how it was damaged.[5] Thus, MSI has failed to properly plead special damages.[6]

## B. Breach of Contract

In count III, MSI alleges that its subcontract with HMS was breached by HMS due to HMS's failure to submit the checks from the insurance companies in a timely manner

---

3. *International Serv. Assoc., Inc.*, is a case with somewhat analogous facts to the instant case.

4. In *American Pet Motels*, the defendant—a veterinarian and chairman of the Animal Breeder–Dealer Liaison Committee—stated that the plaintiff—a pet boarding service—treated a cat for a parasite infection with persons who were not veterinarians and that the state's attorney would be notified of the incident. The defendant's statement was made to the executive committee of the Chicago Veterinarian Medical Association ("CVMA") and was subsequently published in the CVMA's regular newsletter. The plaintiff claimed its business was prejudiced as a result. The First District concluded that prejudice may have occurred, but such prejudice was too slight to justify an award of damages without proof.
Certainly, the *American Pet Motels* case presented a more compelling factual scenario for justifying an award of damages without proof than the instant case presents.

5. MSI characterizes its claims as *solely* libel *per se* claims. MSI claims that its reputation was damaged because the statements were libelous *per se*. As discussed, the statements were not libelous *per se*. Thus, the conclusory allegation that its reputation was damaged will not suffice to qualify as "specifically stated" special damages under Rule 9(g). *See Brown & Williamson Tobacco Corp.*, 713 F.2d at 270.

6. The only claims against Kugajevsky are the two libel claims. The parties have devoted considerable time to arguing whether the Court has jurisdiction over Kugajevsky—a New York resident—or whether the "fiduciary shield" doctrine protects him from having to defend a case in Illinois. Because we dismiss the counts against Kugajevsky, there is no reason for the Court to determine if Kugajevsky is protected by the "fiduciary shield" doctrine.

to MSI. HMS argues that there is no provision of the contract which states that HMS must submit the checks to MSI in a timely manner; thus, there could be no breach.

The Court disagrees with HMS.

It appears MSI has adequately plead a breach of contract claim based on a breach of the implied covenant of good faith and fair dealing. In the State of Illinois, "[e]very contract implies good faith and fair dealing between the parties to it." *Williams v. Jader Fuel Co., Inc.,* 944 F.2d 1388, 1394 (7th Cir.1991). The implied covenant of good faith and fair dealing requires a party vested with contractual discretion to exercise the discretion "in a manner consistent with the reasonable expectations of the parties." *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1445 (7th Cir.1992); *Williams,* 944 F.2d at 1394 ("[A] party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.").

Here, the primary purpose of the subcontract between MSI and HMS was for HMS to collect checks from insurance companies and then submit the checks to MSI. There is no provision in the contract which speaks directly to the timely transmission of the checks to MSI. Thus, HMS was vested with the *unfettered discretion* regarding the submission of the checks to MSI. And, pursuant to the implied covenant of good faith and fair dealing, HMS was to exercise that discretion reasonably, in a manner consistent with the expectations of the parties. The complaint alleges that HMS was aware that timely submission of the checks to MSI was essential to both MSI and IDPA, and that HMS failed to submit the checks in a timely manner. Accordingly, MSI is claiming that HMS exercised its discretion regarding the submission of the checks in a manner inconsistent with MSI and IDPA's expectations. Such a claim is viable under a theory based on a breach of the implied covenant of good faith and fair dealing.

## IV. Conclusion

In summary, since this is not the type of case where serious reputational damage can be presumed, MSI's libel *per se* claims are dismissed with prejudice. Further, since MSI has not sufficiently plead any special or actual damages, it has no actionable claim for libel. The breach of contract claim survives, however. Taking the allegations as true, it appears HMS breached the implied covenant of good faith and fair dealing as it exercised its discretion regarding the submission of the checks to MSI.

*Ergo,* Defendants' motion to dismiss is ALLOWED IN PART and DENIED IN PART.