(No. 53954.—

JOHN CALVIN COLSON, Appellee, v. LEWIS STIEG, Appellant.

*Opinion filed February 19, 1982.—Rehearing denied March 25, 1982.*

CLARK, MORAN, and SIMON, JJ., specially concurring.

Robert K. Skolrood, of Tulsa, Oklahoma (Jack D. Ward and John Templin, of counsel), for appellant.

James R. Buck, of Klein, Stoddard & Buck, of Sycamore, for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

John Calvin Colson filed suit in the circuit court of De Kalb County charging that the defendant, Lewis Stieg, had published certain defamatory remarks about the plaintiff's performance of his duties as an assistant professor in the Department of Library Science at Northern Illinois University. Lewis Stieg was chairman of the department. The plaintiff was first employed by Northern Illinois University in 1975 and had served in the capacity of assistant professor since that time. He had moved from Denver, Colorado, to accept a position at Northern with the expectation that he would be granted tenure; however, his

request for promotion and tenure status was denied.

The complaint alleged that the defendant made two defamatory statements attacking the plaintiff in his profession, which, it is alleged, were therefore slanderous *per se*. (See *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 340; Prosser, Torts § 112, at 754-60 (4th ed. 1971).) The first statement allegedly made by the defendant was:

> "I have information I cannot divulge which reflects adversely on John's performance as a teacher."

The second statement allegedly made by the defendant was:

> "I have counseled John many times about his teaching and the documents which would prove the counseling are missing from the department files under suspicious circumstances."

In response to a demand for a bill of particulars, the plaintiff stated that the first words complained of were spoken on October 3, 1977, at a meeting of the Department of Library Science Personnel Committee assembled for the purpose of evaluating John Colson's performance as an assistant professor and for recommendations regarding his application for tenure and promotion. The second statement was made on April 4, 1978, before the University Council Personnel Committee assembled to consider plaintiff's appeal from the Department's recommendation that tenure and promotion be denied.

The trial court granted the defendant's motion to dismiss the plaintiff's first amended complaint for failure to state a cause of action. On appeal, the appellate court held that the first statement complained of was slanderous *per se*, incapable of an innocent construction, and actionable despite a qualified privilege because the plaintiff had properly alleged malice. The appellate court held that the second statement was reasonably capable of conveying an innocent meaning and therefore was not actionable. Since

the amended complaint had stated a cause of action for defamation based upon the first statement, the trial court's order was reversed in part and the cause remanded for further proceedings. (86 Ill. App. 3d 993.) We granted leave to appeal. 73 Ill. 2d R. 315(a).

The correctness of the appellate court's holding as to the second statement has not been raised in this court. We are therefore concerned on this appeal only with defendant's first statement. The defendant contends the statement was absolutely privileged or, alternatively, that it is capable of being innocently construed as one of opinion. The plaintiff insists that the statement was made only under a qualified privilege, that it was a factual assertion, maliciously made, and that it constituted slander *per se* in that it damaged plaintiff in his profession.

The circumstances surrounding the making of the statements in question are not such as to require the protection of an absolute privilege, but instead, come within the accepted areas to which a qualified privilege has been extended. (See Prosser, Torts § 115, at 785 (4th ed. 1971).) However, the classification of the privilege is of little help in determining whether or not the defendant's statement is actionable or whether the allegations of the complaint state a cause of action.

Since the 1964 Supreme Court decision in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, a large area of the law concerning privileges has been taken over and altered by first amendment constitutional considerations. (See generally Schaefer, *Defamation and the First Amendment*, 52 Colo. L. Rev. 1 (1980).) As a result, the scope of the privileges in the law of defamation has been broadened beyond that within which they had previously been recognized. (Prosser, Torts § 118, at 819 (4th ed. 1971).) The *New York Times* holding has essentially replaced the common law qualified privilege which was stated in the terms of "fair comment" upon

public figures and public employees. The "fair comment" common law privilege was not limited to public discussion of public officials or figures, but also extended to the discussion of matters of public concern. Professor Prosser has stated that there is no reason the constitutional privilege of *New York Times* should not be extended to all matters of public concern. (Prosser, Torts § 118, at 823 (4th ed. 1971).) This court has, to a degree, extended the holding of *New York Times* in that direction.

In *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, a newspaper article had referred to an osteopathic physician as a "quack." This court acknowledged that the plaintiff was not a public official or a public figure, but held that the controlling question is whether a public issue, not a public official or public figure, is involved. After considering several Supreme Court cases, this court stated that the factor triggering the constitutional privilege seems to be that the statement concerns a matter of "public interests" and stated:

"In our judgment the conclusion is inescapable from [the cases discussed] that the defendants in this case must be accorded at least the same degree of immunity accorded to the defendant in [*Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975]. Medical quackery is an area of critical public concern which clearly qualifies under the *Butts* test as a subject "'about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.'" [388 U.S. 130, 147, 18 L. Ed. 2d 1094, 1106, 87 S. Ct. 1975, 1987.]" (*Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, 291.)

This court also stated in that case:

"In determining a subject's importance to the public, we must consider not only the number of persons affected by the subject, but also the severity of its impact upon those so affected. Thus, the fact that

plaintiff's personal contacts were presumably with only a small portion of the public does not militate against immunity where the publications concern a matter of such vital importance as the qualifications and practices of one who represents herself as qualified to treat human ills." *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, 292.

In *Gertz v. Welch* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997, the Supreme Court discussed the need to accord adequate protection of first amendment liberties by avoiding self-censorship and the stifling of the free flow of information and expression of ideas. The court noted that in *New York Times* it had found that under the traditional action for defamation, the allowance of the defense of truth, with the burden of proving it on the defendant, deterred not only false statements, but also legitimate comment. Understandably, one being cognizant of the ever-present danger of being made a defendant in a defamation action and of the burden that would be placed upon him in sustaining the defense of truth would be reluctant to freely express himself on a controversial subject. The court, in *Gertz,* discussed the need to balance the interest of a State in redressing wrongful injuries of defamed persons against the need for vigorous and uninhibited discussion and stated:

"In our continuing effort to define the proper accommodation between these competing concerns, we have been especially anxious to assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise." *Gertz v. Welch* (1974), 418 U.S. 323, 342, 41 L. Ed. 2d 789, 806, 94 S. Ct. 2997, 3008.

Thus, under the *New York Times* rule, in order to accord the breathing space essential to the exercise of the constitutional freedoms of speech and press, the burden of proof shifted, and in cases in which that holding is applicable, the burden is no longer on the defendant to prove the truthfulness of the utterance. The burden is now on the

plaintiff to plead and prove actual malice on the part of the defendant, that is, that the utterance was made with knowledge of its falsity or in reckless disregard of whether it was false or true. *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, 293.

In reaching the accommodation between competing concerns, referred to in *Gertz,* the challenged statement must be assessed in the context in which it was published. The extent of the publication and those who were its recipients are subjects of primary consideration. Since whether or not one is defamed depends upon the effect the publication had upon those who received it, the statement must be capable of conveying a defamatory meaning to the hearer. (See Prosser, Torts § 111, at 737 (4th ed. 1971); L. Eldredge, The Law of Defamation § 9, at 44-45 (1978).) The focus therefore must be upon the statement and its predictable effect upon those who received the publication. *Information Control Corp. v. Genesis One Computer Corp.* (9th Cir. 1980), 611 F.2d 781, 784; *Gregory v. McDonnell Douglas Corp.* (1976), 17 Cal. 3d 597, 603, 552 P.2d 425, 429, 131 Cal. Rptr. 641, 645; Eaton, *The American Law of Defamation Through Gertz v. Robert Welch, Inc. And Beyond: An Analytical Primer,* 61 Va. L. Rev. 1349, 1352 (1975).

The publication of the questioned statement in our case was not made to the general public and it was not made to a group of persons who had no other means of acquiring knowledge of the plaintiff's teaching capabilities. The statement was made to the Department of Library Science Personnel Committee, which was charged with the responsibility of evaluating plaintiff's performance as a teacher. The record does not disclose the exact number of people who comprised this committee, but the allegations of the complaint stated that the statement was made to four named individuals at that meeting. Presumably, these four were the only members of the committee present. Thus, the publication was made to a very small, specialized group. All

of the compelling reasons for applying the constitutional first amendment protections of *New York Times* are present in this case, especially the necessity for free and uninhibited discussion and the need to avoid self-censorship. In some cases teachers have been held to be "public figures" or "public officials" for purposes of applying *New York Times*. (See *Johnson v. Board of Junior College District No. 508* (1975), 31 Ill. App. 3d 270; *Kapiloff v. Dunn* (1975), 27 Md. App. 514, 343 A.2d 251.) However, we need not in this case decide whether plaintiff was a public figure or public official, because the facts justify following *Farnsworth* and holding that this case clearly qualifies under the *Butts* test as a subject about which information is needed or appropriate to enable the members of the committee to cope with the issues confronting them.

The need for the free flow of information and for vigorous and uninhibited discussion in a situation such as we have before us is such that the first amendment privilege defined in *New York Times* must apply to the publication of statements to this committee. Absent this protection, those whose duty it is or those who are requested to give information to the committee will cautiously indulge in self-censorship to avoid the burden of defending a defamation action. This can only result in a severe limitation on the ability of the committee to perform its assigned task of evaluating performances of the personnel of the university. In light of the limited scope of the publication and the interest and concern of the group to whom the statement was published, we find that the first amendment privilege of *New York Times* must be applied to the statement made by the defendant.

*Gertz* noted that in addition to the more important consideration of society's interest in public officials and affairs, which supported the decision of *New York Times,* there also exists the added factor that public officials and figures enjoy a greater access to channels of communication than

do ordinary citizens. Therefore, the court concluded, a public official or figure would have a more realistic opportunity to counteract false statements than private individuals normally enjoy. This reasoning was also recognized in *Wolston v. Reader's Digest Association, Inc.* (1979), 443 U.S. 157, 61 L. Ed. 2d 450, 99 S. Ct. 2701, and in *Hutchinson v. Proxmire* (1979), 443 U.S. 111, 61 L. Ed. 2d 411, 99 S. Ct. 2675. If the defendant in our case would have published the statement in question to the public in general, it is possible that the plaintiff would not have had sufficient access to the channels of communication to overcome or offset the damaging effect of defendant's statement. We make no assessment of the propriety of the use of the *New York Times* privilege in such a situation. However, given the narrow extent of the publication in this case and the fact that the plaintiff had an opportunity for input to the committee and through appeal to have its decision reviewed by the University Council Personnel Committee, the reasoning of *Gertz, Wolston* and *Hutchinson* does not preclude applying the *New York Times* privilege in this case.

Under the holding of *New York Times,* the plaintiff must plead and prove actual malice in order to maintain an action for defamation. In this context, to satisfy the "malice" requirement, it is incumbent upon the plaintiff to plead and prove that the statement was made with knowledge of its falsity or in reckless disregard of whether it was false or true. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) In *Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 13 L. Ed. 2d 125, 132, 85 S. Ct. 209, 215, the Supreme Court held that under *New York Times* a public official might be allowed a civil remedy only if he establishes (1) that the utterance was false, and (2) that it was made with knowledge of its falsity, or (3) that it was made in reckless disregard as to its truth or falsity. (See also *Farnsworth v. Tribune Co.* (1969), 43 Ill.

2d 286, 293.) Since this case is before us on the pleadings, the allegations of the complaint must be judged against these requirements.

The amended complaint charged that the defendant made the following statement concerning the plaintiff:

" 'I have information I cannot divulge which reflects adversely on John's performance as a teacher.'

Said statement was made by Defendant knowing it to be false, without reasonable grounds for believing it to be true, maliciously, wilfully, intentionally and without reasonable justification or excuse with the intention of destroying Plaintiff's personal and professional reputation, causing Plaintiff to be denied tenure, to be terminated from employment with Northern Illinois University effective May, 1979 and interfering with his ability to be suitably employed in the future. Said statement caused Plaintiff extensive mental and physical anguish and financial loss."

These allegations do not strictly comply with the requirements of the Civil Practice Act, in that each separate allegation is not separately stated, but all are contained in one rambling sentence. (See Ill. Rev. Stat. 1977, ch. 110, par. 33.) Also, the allegations attempt to state a cause of action based on intentional, wilful and wanton, and negligent conduct all in the same sentence. (See Ill. Rev. Stat. 1977, ch. 110, par. 43.) Furthermore, the sentence is replete with allegations of conclusions and not facts. (See Ill. Rev. Stat. 1977, ch. 110, par. 31.) However, the command of the Civil Practice Act is that the act "shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." (Ill. Rev. Stat. 1977, ch. 110, par. 4.) As noted above, under *New York Times*, it is incumbent upon the plaintiff to plead and prove that the statement was made with knowledge of its falsity, or in reckless disregard of whether it was false or true.

The allegations quoted above, in addition to the many

irrelevant charges, alleged that the statement was made by the defendant "knowing it to be false." Also contained within the allegation is the charge that the statement was made maliciously, wilfully and intentionally.

In *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 266, and in *Weber v. Woods* (1975), 31 Ill. App. 3d 122, it was held that an allegation that the facts asserted were false and that the statement was made knowing it to be false were sufficient allegations. Although we do not cite the allegations contained in this complaint as a model, we find that the elements necessary under *New York Times* have been sufficiently alleged.

For the above reasons, the judgment of the appellate court is affirmed and the cause is remanded to the circuit court of De Kalb County for further proceedings in conformance with the holding in this opinion.

*Affirmed and remanded.*

JUSTICE CLARK, specially concurring:

I agree with the majority's conclusion that the complaint states a cause of action. It alleges that false and defamatory statements were made with actual malice, and alleges actual malice in terms almost identical to those held sufficient by this court in *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257. I do not think, however, that the plaintiff was required to allege actual malice according to the *New York Times* standard in order to state a cause of action. *New York Times* simply does not apply to this case.

It is not clear to me why, in a defamation action between two *private persons*—a college teacher and his department head—the *New York Times* requirement of knowing or reckless falsity should apply. I cannot subscribe to the majority's apparent belief that defamation suits such as the one here so seriously threaten first amend-

ment interests that imposition of the *New York Times* rule is necessary to protect them. Nor, apparently, does the United States Supreme Court. In *Gertz v. Welch* it declared that, in suits by private figures, imposing a standard of liability less rigorous than the *New York Times* standard does not impermissibly abridge freedom of speech and press. *Gertz v. Welch* (1974), 418 U.S. 323, 347, 41 L. Ed. 2d 789, 809, 94 S. Ct. 2997, 3010.

The *New York Times* rule was first enunciated by the United States Supreme Court in a case involving a defamation suit brought by a public official, and was made mandatory only for such plaintiffs. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.) The court later extended the rule to suits by public figures. (*Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975.) The plaintiff's status as a public official or a public figure, to whom the *New York Times* standard must be applied, or as a private figure, to whom the standard does not apply, is the key factor in the United States Supreme Court's analysis of first amendment constraints on State-law remedies for injury to reputation. Annot., *Progeny of New York Times v. Sullivan in the Supreme Court,* 61 L. Ed. 2d 975, 987-88 (1980); Christie, *Injury to Reputation and the Constitution: Confusion Amid Conflicting Approaches,* 75 Mich. L. Rev. 43 (1976); Hill, *Defamation and Privacy under the First Amendment,* 76 Colum. L. Rev. 1205 (1976); see Restatement (Second) of Torts secs. 580A (Defamation of Public Official or Public Figure), and 580B (Defamation of Private Person) (1977).

The Supreme Court's definition of "public figure," developed over a series of cases, includes any person having some special prominence in the affairs of society, or the resolution of public questions, either by having achieved such pervasive fame or notoriety that he becomes

a public figure for all purposes and in all contexts, or by voluntarily injecting himself into a particular public controversy and thereby becoming a public figure for a limited range of issues. (*Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975; *St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323; *Gertz v. Welch* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997; *Time, Inc. v. Firestone* (1976), 424 U.S. 448, 47 L. Ed. 2d 154, 96 S. Ct. 958; *Wolston v. Reader's Digest Association, Inc.* (1979), 443 U.S. 157, 61 L. Ed. 2d 450, 99 S. Ct. 2701.) Clearly the plaintiff here is not within this category. Nor could he be deemed a "public official" simply because he is a public employee. (*Hutchinson v. Proxmire* (1979), 443 U.S. 111, 61 L. Ed. 2d 411, 99 S. Ct. 2675.) In sum, there is no Federal constitutional reason why a plaintiff cannot recover actual damages in a defamation suit upon a showing of the defendant's negligence with regard to the truth or falsity of the defamatory statement. *Gertz v. Welch* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997; *Troman v. Wood* (1975), 62 Ill. 2d 184, 192-94; Restatement (Second) of Torts sec. 580B (1977).

Nor do I think we are required by any reason of State law or policy to extend the *New York Times scienter* standard to cases of purely private defamation. I agree with Justice Schaefer's observation, in *Troman v. Wood*, that such a limitation on redress for injury to reputation would unduly subordinate the rights of the individual. *Troman v. Wood* (1975), 62 Ill. 2d 184, 195.

Here, moreover, the private defamation plaintiff's right to recover is already limited by the common law doctrine of qualified privilege, sometimes also called conditional privilege:

" 'A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, might be defama-

tory and actionable: 33 Am. Jur., p. 123. \*\*\* Where circumstances exist, or are reasonably believed by the defendant to exist, from which he has an interest or duty, or in good faith believes he has an interest or duty, to make a certain communication to another person having a corresponding interest or duty, and the defendant is so situated that he believes, in the discharge of his interest or duty or in the interests of society, that he should make the communication, and if he makes the communication in good faith, under those circumstances, believing the communication to be true, even though it may not be true, then the communication is qualifiedly or conditionally privileged, even though the defendant's interest or duty be not necessarily a legal one but only moral or social and imperfect in character \*\*\*.' " *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 349, quoting *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 376-77.

The majority opinion notes, and plaintiff conceded before the appellate court, that defendant in this case had a qualified privilege in making the statements concerning plaintiff to the faculty committee. (89 Ill. 2d at 209; *Colson v. Stieg* (1980), 86 Ill. App. 3d 993, 997.) To overcome the privilege and hold the defendant liable, plaintiff would have to prove that the defendant did not believe the truth of the defamatory matter, or had no reasonable grounds to believe it true. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 350.) This accomodation, through the rules of privilege, of the interest in free expression and uninhibited exchange of information is built right into the common law, and I do not think that the United States Supreme Court's decisions in this area render or were intended to render them nugatory. Indeed, since *New York Times* was announced, a number of jurisdictions

have found statements made in precisely the factual context presented in this case—a faculty committee's tenure evaluation meeting—to be conditionally privileged, and have denied recovery on that basis. Stevens, *Evaluation of Faculty Competence as a "Privileged Occasion,"* 4 J. Coll. & Univ. Law 281 (1977).

The majority opinion does not base its determination that the *New York Times* standard should apply to this case on a finding that the plaintiff here was a public figure, or that the subject of the statement was a "matter of public or general interest." (The United States Supreme Court, in *Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811, flirted briefly with a rule that would have made the *New York Times* standard applicable whenever the defamatory statement concerned a matter of "general or public interest." This position was never adopted by a majority of the court, and was explicitly repudiated by the court in *Gertz v. Welch* (1974), 418 U.S. 323, 346, 41 L. Ed. 2d 789, 809, 94 S. Ct. 2997, 3010.) Rather, primary reliance is placed on the importance of the subject matter of the communication to the speaker and hearers. (89 Ill. 2d at 212.) The argument, if I understand it correctly, is that because of the "interest and concern" and "need for *** information" of speaker and hearers (89 Ill. 2d at 213), their first amendment interests in free expression and uninhibited exchange of information become so urgent that the "actual malice" rule is required to prevent them from being curtailed by the threat of liability for defamation.

No opinion of the United States Supreme Court or this court provides a precedent for this rationale. Rather, as discussed above, the common interest or concern of speaker and hearers is the traditional basis for finding that a privilege to make a defamatory statement exists.

The United States Supreme Court in *Gertz* acknowledged the importance of reputational interests and the

"strong and legitimate State interest in compensating private individuals for injury to reputation." (418 U.S. 323, 348-49, 41 L. Ed. 2d 789, 810, 94 S. Ct. 2997, 3011.) Our State constitution provides that every individual is entitled to a remedy "for all injuries and wrongs which he receives to his person, privacy, property or reputation." Ill. Const. (1970), art. I, sec. 12.

I think that defendant here had a qualified privilege under the rationale of *Zeinfeld v. Hayes Freight Lines, Inc.,* and plaintiff need only allege and prove that the defendant publisher did not believe in the truth of the defamatory matter, or had no reasonable grounds for believing it to be true.

MORAN and SIMON, JJ., join in this special concurrence.