966 F.2d 1456
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION LOCAL
NO. 7-765, Theodore Morgan, William Branch, et
 
 al., Plaintiffs-Appellants,
v.
STAUFFER CHEMICAL COMPANY, Defendant-Appellee.
 No. 91-1265.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 12, 1991.
Decided June 10, 1992.
 Before WOOD, Jr.,* COFFEY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Oil, Chemical and Atomic Workers International Union and certain individual Union members (collectively "Union") appeal from the Court's grant of summary judgment in favor of the Stauffer Chemical Company ("Stauffer"), alleging that the district court erred in determining that the Union failed to establish claims for defamation and intentional infliction of emotional distress. We affirm.
 
 I.
 
 2
 The incident that gave rise to the Union's complaint occurred at Stauffer's Chicago Heights, Illinois plant. The Union and Stauffer were parties to a collective bargaining agreement that expired at 7:00 a.m. on January 16, 1987. As the first shift of union employees entered the plant at 7:00 a.m. on January 16, 1987, Stauffer refused to permit them to work but instead escorted them to non-work areas of the plant until management could determine if a new labor contract would be reached. Shortly after 7:00 a.m., plant management discovered that someone had tampered with the air dryer system for the main plant as well as a key production tank. Specifically, the power switch that governs the electrical current to the main plant air dryer was set in the "off" position, while the control which regulates the temperature of water in a key production tank was adjusted downward, thus interfering with production because the filter in the tank became plugged. Both adjustments could only be made manually.
 
 
 3
 Plant manager Norman Kjos was informed of both of these irregular occurrences. Kjos contacted his direct superiors in Connecticut and after a short discussion, it was determined that the Union employees should be barred from the plant due to the two irregular occurrences (tampering) and also because it appeared that the bargaining negotiations were at a stand still. The following statement was prepared and read to Union representatives present at the scheduled 10:00 a.m. bargaining session:
 
 
 4
 "We have no work available due to incidents of sabotage. Management personnel will operate the plant to protect it from further damage. The Company is ready, willing, and able to negotiate. We want to reach an agreement so that you may return to work."
 
 
 5
 Other than reading the statement to Union representatives and providing it to contract security guards in order that it could be relayed to the second shift employees as they reported for work, the statement was never disseminated by Stauffer. The lockout subsequently ended approximately five months later on June 22, 1987, when a new contract was negotiated between the Union and Stauffer.
 
 
 6
 The Union thereafter brought claims for defamation and for intentional infliction of emotional distress in Illinois state court, contending that Stauffer had planned the lockout regardless of any alleged sabotage and that the reference to sabotage was merely an attempt to defame the Union and individual Union members. The case was subsequently removed to federal court on the basis of diversity of parties, and on January 7, 1991, the district court granted summary judgment in favor of Stauffer on both claims.
 
 II.
 
 7
 The Union presents the following question on appeal: does a genuine issue of material fact exist as to whether Stauffer made its accusation of sabotage knowing the accusation to be false or with reckless disregard for its truth or falsity?[1]
 
 III.
 
 8
 The Union argues that the district court erred in granting summary judgment in favor of Stauffer on the Union's defamation claim because of substantial evidence in the record indicating that Stauffer made its accusation of sabotage knowing that the accusation was false and/or without regard for its truth or falsity. The Union alleges that this evidence includes admissions of company officials that the lockout was not motivated by sabotage and was planned by Stauffer before any claimed discovery of sabotage occurred.
 
 
 9
 A district court's grant of summary judgment is appropriate when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). We will reverse a grant of summary judgment "upon the showing of a dispute over material fact, however, the plaintiff must 'allude to specific facts which raise a genuine issue for trial.' " State of Illinois by the Illinois Department of Public Aid v. Bowen, 808 F.2d 571, 573-74 (7th Cir.1986) (quoting Linhart v. Glatfelter, 771 F.2d 1004, 1008 (7th Cir.1985)). Furthermore, an appellate court's review of a grant of summary judgment requires the court to view the record and the inferences drawn therefrom in a light most favorable to the party opposing the motion. Id.
 
 
 10
 The Illinois Supreme Court addressed what a plaintiff must prove in a suit for defamation:
 
 
 11
 "To make out a claim for defamation, the plaintiff must set out sufficient facts to show that the defendants made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff. (See, e.g. Restatement (Second) of Torts § 558 (1977).) If the defamation claim arises out of an employer-employee relationship, the plaintiff may be confronted with a qualified privilege. To overcome the privilege, the plaintiff has to plead and prove that the statements were made with actual malice. (See, e.g., W. Prosser, Torts § 115, at 794 (4th ed. 1971); Colson v. Stieg (1982), 89 Ill.2d 205, 214 60 Ill.Dec. 449, 433 N.E.2d 246; Zeinfeld v. Hayes Freight Lines, Inc. (1968), 41 Ill.2d 345, 349, 243 N.E.2d 217.) 'Actual malice' in this context requires the plaintiff to plead and prove that the statement was made with knowledge of its falsity or in reckless disregard of whether it was true or false. New York Times Co. v. Sullivan (1964), 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706; Colson v. Steig (1982), 89 Ill.2d 205, 214, 60 Ill.Dec. 449, 433 N.E.2d 246.)"
 
 
 12
 Krasinski v. United Parcel Service, Inc., 124 Ill.2d 483, 530 N.E.2d 468, 471 (1988) (emphasis added).
 
 
 13
 There are two types of defamatory statements, those that are actionable per se and those that are actionable per quod:
 
 
 14
 "A publication is defamatory per se if it is 'so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary' (Owen v. Carr (1986), 113 Ill.2d 273, 277, 100 Ill.Dec. 783, 497 N.E.2d 1145); the defamatory character of the statement is apparent on its face, and extrinsic facts are not necessary to explain. (Brown & Williamson Tobacco Corp. v. Jacobson (7th Cir.1983), 713 F.2d 262, 267.) Statements are actionable per quod if they necessitate extrinsic facts or innuendo to explain their defamatory meaning, and require evidence demonstrating, as a matter of fact, that some substantial injury resulted to the aggrieved person from their use. Heerey v. Berke (1989), 188 Ill.App.3d 527, 532, 136 Ill.Dec. 262, 544 N.E.2d 1037."
 
 
 15
 Schaffer v. Zekman, 196 Ill.App.3d 727, 554 N.E.2d 988, 991 (1st Dist.1990). It is undisputed that Stauffer's statement regarding "incidents of sabotage" cannot be defamation per se because neither the Union nor any individual Union member was identified in the statement. Id; see also Latimer v. Chicago Daily News, Inc., 330 Ill.App. 295, 71 N.E.2d 553, 535 (1st Dist.1947). Therefore, the Union characterizes the statement as constituting defamation per quod.
 
 
 16
 In order to determine whether a statement constitutes defamation per quod, the statement "must be viewed in context, read as a whole with words given their natural and obvious meaning." Audition Division, Ltd. v. Better Business Bureau, 120 Ill.App.3d 254, 458 N.E.2d 115, 119 (1st Dist.1983) (citations omitted). The Union apparently argues that the allegedly defamatory statement read as a whole conveys to third persons that the Union and its members are saboteurs:
 
 
 17
 "We have no work available due to incidents of sabotage. Management personnel will operate the plant to protect it from further damage. The Company is ready, willing, and able to negotiate. We want to reach an agreement so that you may return to work."
 
 
 18
 The statement was read to the Union committee, management of the plant, a contract service guard and to second shift employees as they reported for work. The Union contends that the lockout was not motivated by incidents of sabotage, but instead was planned in advance by Stauffer in accordance with company policy regarding collective bargaining. According to Stauffer, the statement was issued for two reasons: (1) plant management discovered two incidents of intentional tampering with plant equipment that raised a real possibility of damage to the plant (air dryer for main plant turned off and temperature gauge in production tank turned down); and (2) it appeared that the Union and Stauffer would be unable to reach a new collective bargaining agreement. Because a lockout is a proper bargaining tactic under the National Labor Relations Act, 29 U.S.C. § 158(d)(4), it is irrelevant whether Stauffer had any plans for a lockout prior to discovering the incidents of alleged sabotage. Most importantly, the Union has failed to demonstrate "that some substantial injury resulted" as a consequence of Stauffer's use of the statement. Schaffer, 554 N.E.2d at 991.
 
 
 19
 Furthermore, the statement refers to neither the Union nor its members, but rather presents the information in a straightforward and dispassionate manner. Indeed, one must pile inference upon inference in order to arrive at the conclusion that the statement was aimed at any particular Stauffer worker. Given that the statement mentions neither the Union nor any particular employee, the Union was required to provide extrinsic facts which would render the statement defamatory. In granting summary judgment in favor of Stauffer, the district court noted that the Union "failed to show any extrinsic facts which would render the statements libel per quod...." We agree and note that the Union is unable to demonstrate that Stauffer knew the statement was false or acted with reckless disregard of its truth. We affirm; the Union's defamation claim is without merit.[2]
 
 
 
 *
 Judge Wood, Jr., assumed senior status on January 16, 1992, which was after oral argument in this case
 
 
 [1]
 The Union has failed to present any arguments much less case law dealing with the district court's grant of summary judgment in favor of Stauffer on the Union's second cause of action, intentional infliction of emotional distress. The Union's failure to argue any issue with respect to the intentional infliction of emotional distress claim constitutes a waiver of this issue, as issues must be argued to be preserved. Hershinow v. Bonamarte, 735 F.2d 264, 266 (7th Cir.1984). See also Bugg v. International Union of Allied Industrial Workers of America, 674 F.2d 595, 598 n. 4 (7th Cir.1982)
 
 
 [2]
 Because we hold that the Union failed to demonstrate extrinsic evidence which would render the statement libel per quod, we need not address the additional finding of the district court that Stauffer properly asserted its conditional privilege to speak freely in the interest of the public good. See Audition Division, Ltd., 458 N.E.2d at 120