JUSTICE FREEMAN, concurring in part and dis- senting in part: I agree with the majority that it is appropriate to reverse the circuit court’s order dismissing the case. However, I would arrive at that conclusion by a different route than the majority, because I respectfully dissent from that portion of the majority opinion which reaffirms the “innocent construction rule.” While I strongly believe in the doctrine of stare decisis, I do not believe its application in this case is proper for several reasons. First, the innocent construction rule is, in my view, out of step with the first amendment jurisprudence of the United States Supreme Court. Second, I find compelling plaintiffs arguments — which I do not believe this court ever to have addressed — that the innocent construction rule is inherently flawed. The fact that the rule has been rejected by an overwhelming majority of jurisdictions reinforces my belief. This court’s own inconsistent application of the rule also demonstrates the flaws inherent therein, and suggests that the need exists for this court to revisit the question of the rule’s continued place in our case law. To my mind, these facts together constitute sufficient cause for stare decisis to yield. Stare decisis is a valid and useful rule of thumb, but as we have long acknowledged, it is not an “inexorable command.” Chicago Bar Ass’n v. Illinois State Board of Elections, 161 Ill. 2d 502, 510 (1994). Rather, it is a means to the end of “ensuring] that the law will not merely change erratically, but will develop in a principled and intelligible fashion.” Chicago Bar Ass’n, 161 Ill. 2d at 510. Prior decisions should not be overruled absent “good cause” (Moehle v. Chrysler Motors Corp., 93 Ill. 2d 299, 304 (1982)), but good cause exists when the prior decision in question proves to be unworkable or badly reasoned (People v. Sharpe, 216 Ill. 2d 481, 520 (2005), citing People v. Jones, 207 Ill. 2d 122, 134 (2003)). Nor, we have noted, does it do violence to stare decisis to overrule a prior decision which the court has been quietly disavowing since its inception. See People v. Mitchell, 189 Ill. 2d 312, 339 (2000) (“ ‘explicitly overruling [a prior decision] is not an “erratic” change in the law. In the eighteen years since [that case], every case interpreting [it], including today’s majority opinion, has eroded its holding. I would merely make explicit what this court has done implicitly for the last eighteen years’ ”), quoting McMahan v. Industrial Comm’n, 183 Ill. 2d 499, 518 (1998) (Heiple, J., specially concurring). A brief review of the history of the innocent construction rule is in order. We initially adopted the rule in 1964, in John v. Tribune Co., 24 Ill. 2d 437 (1962). There, we stated in “obiter dictum(Chapski v. Copley Press, 92 Ill. 2d 344, 347-48 (1982)) that “the language in defendant’s articles is not libelous of plaintiff when the innocent construction rule is consulted. That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared non-actionable as a matter of law.” John, 24 Ill. 2d at 442. We did not offer any rationale for adopting the rule, despite the fact that we had made Illinois an outlier by doing so. See, e.g., Comment, The Illinois Doctrine of Innocent Construction: A Minority of One, 30 U. Chi. L. Rev. 524 (1963). Commentators subsequently recognized that the rule could have the beneficial effect of mitigating the doctrine of strict liability in the law of defamation (30 U. Chi. L. Rev. at 538-39), but that doctrine was abolished 10 years after John, over 30 years prior to the present day. Chapski, 92 Ill. 2d at 350, citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). Approximately 20 years after John, this court decided Chapski. There, we debated whether to persist with the innocent construction rule. Recognizing that the rule had been applied in wildly divergent ways by our appellate court, the strongest argument this court could muster in defense of the innocent construction rule was “that it comports with the constitutional interests of free speech and free press and encourages the robust discussion of daily affairs.” Chapski, 92 Ill. 2d at 350, citing Dauw v. Field Enterprises, Inc., 78 Ill. App. 3d 67, 71 (1979). Nevertheless, we also acknowledged in Chapski that since John had been decided, there had come broader general protection for first amendment interests. Chapski, 92 Ill. 2d at 351 (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), and New York Times Co. v. Sullivan, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964) (abolishing doctrine of strict liability for both private and public plaintiffs, respectively)). We also recognized the existence of “various privileges” protective of free speech. Chapski, 92 Ill. 2d at 351 (citing Colson v. Stieg, 89 Ill. 2d 205, 209 (1982), Catalano v. Pechous, 83 Ill. 2d 146, 167-68 (1980), Blair v. Walker, 64 Ill. 2d 1 (1976), Farnsworth v. Tribune Co., 43 Ill. 2d 286 (1969), Zeinfeld v. Hayes Freight Lines, Inc., 41 Ill. 2d 345 (1968), and Restatement (Second) of Torts §§583 through 613 (1977)). We accordingly concluded that the rule’s protection was sufficiently less compelling that we could modify the rule as announced in John to clarify that “a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable per se. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff.” Chapski, 92 Ill. 2d at 352, citing Troman v. Wood, 62 Ill. 2d 184, 189 (1975). We have applied the rule numerous times since Chapski but have never since explicitly modified it. See, e.g., Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558 (2006); Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 90, 93 (1996); Kolegas v. Heftel Broadcasting Corp., 154 Ill. 2d 1, 11 (1992); Mittelman v. Witous, 135 Ill. 2d 220 (1989); Costello v. Capital Cities Communications, Inc., 125 Ill. 2d 402 (1988). Nor have we, since Chapski, expressly addressed any challenge to the rule, so far as I am aware. The first reason that I believe stare decisis must yield in this case is that the innocent construction rule is out of step with United States Supreme Court precedent involving defamation and the first amendment’s protection of free speech. It is outdated. That is not to say that “robust discussion of daily affairs” (Chapski, 92 Ill. 2d at 350) has become passé, but as the Supreme Court has long recognized, free speech is not the only societal interest at issue in defamation actions. “If it were, this Court would have embraced long ago the view that publishers and broadcasters enjoy an unconditional and indefeasible immunity from liability for defamation.” Gertz, 418 U.S. at 341, 41 L. Ed. 2d at 806, 94 S. Ct. at 3007. Rather, that interest is in tension with the individual’s interest in maintaining his good name against defamatory falsehood. Gertz, 418 U.S. at 341, 41 L. Ed. 2d at 806, 94 S. Ct. at 3008. Thus, the simple fact that the innocent construction rule favors free speech (see 224 Ill. 2d at 511, citing Chapski, 92 Ill. 2d at 350) is not sufficient reason to prefer it. Moreover, as first amendment jurisprudence has evolved, the United States Supreme Court has provided a great deal of additional protection to free speech which did not exist at the time of John or Chapski. Sullivan and Gertz were, of course, landmark cases in defamation law which were decided after John but before Chapski. They did away with the doctrine of strict liability in defamation actions, and we took them into account when we modified the rule in Chapski. See Chapski, 92 Ill. 2d at 351. But the Court has announced numerous significant decisions since Chapski, as plaintiff notes in his brief to this court. For instance, the Court has ruled that when the speech at issue concerns a matter of public importance, the burden is on the plaintiff to prove the speech false (rather than truth being an affirmative defense which the defendant must raise and prove) even when the plaintiff is not a public figure. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 776, 89 L. Ed. 2d 783, 792, 106 S. Ct. 1558, 1563 (1986). The Court has erected an absolute bar to recovery for any speech which cannot “reasonably have been interpreted as stating actual facts” about a public figure. Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50, 99 L. Ed. 2d 41, 48, 108 S. Ct. 876, 879 (1988). And, as the majority recognizes, Milkovich v. Lorain Journal Co., 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990), wrought yet another change in defamation law. There, the Court disavowed the statement in Gertz that “[hjowever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas” (see Gertz, 418 U.S. at 339-40, 41 L. Ed. 2d at 805, 94 S. Ct. at 3007) as mere “dictum” which was not “intended to create a wholesale defamation exemption for anything that might be labeled ‘opinion.’ ” Milkovich, 497 U.S. at 18, 111 L. Ed. 2d at 17, 110 S. Ct. at 2705. Rather, Milkovich clarified, the question is whether the statement is “provable as false,” at least with respect to speech on matters of public concern involving a media defendant. Milkovich, 497 U.S. at 19-20, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706. A comprehensive dissertation on defamation law since 1964 is well beyond the scope of this partial dissent. But what is apparent even from the above cursory survey is that a number of factors come into play in balancing free speech concerns against the rights of the individual against defamation. The calculus turns on such variables as whether the plaintiff is a public figure, whether defendant is a member of the media, and the degree of public interest in the subject matter of the allegedly defamatory speech at issue. Although some of these permutations had been settled at the time Chapski was decided, not all had. What is further apparent is that the innocent construction rule is blind to all of the above distinctions. We have applied the rule when the defendant is a member of the media (Solaia Technology, 221 Ill. 2d 558 (trade magazine); Bryson, 174 Ill. 2d 77 (national magazine)) and when the defendant is a private individual (Mittelman, 135 Ill. 2d 220 (member of board of directors of plaintiffs law firm)). The rule is in equal force when the plaintiffs are public figures (Catalano v. Pechous, 83 Ill. 2d 146 (1980) (city aldermen)) and when the plaintiff is a private individual (Bryson, 174 Ill. 2d 77 (private individual living in a small town in southern Illinois)). Nor does my review of our case law evince any attempt to take into account the degree of public interest in the subject matter of the speech at issue. The rule is wholly insensitive to the complex context-sensitive balance between the public’s interest in free speech and the individual’s interest in his good name, unsullied by falsehood. So far as I can see, the innocent construction rule is nothing more than a thumb on the scale on the side of the defendant in every per se defamation case. It is out of step with the delicate balances inherent in defamation law and this alone constitutes sufficient reason to overrule it, stare decisis notwithstanding. My second basis for finding cause to depart from stare decisis deals with the very operation of the innocent construction rule. Not only is it out of step with defamation law generally — a sledgehammer where a scalpel is called for — it is intrinsically logically flawed and inconsistent with our general standards applicable at the dismissal stage of lawsuits. The majority purports to address these concerns, but I believe it falls short. Plaintiff argues that by its terms, the innocent construction rule does away with the role of the jury, and he is correct. According to the rule, at the dismissal stage, the court must answer the threshold question of whether, as a matter of law, a statement can reasonably be read innocently. If the answer is yes — i.e., the statement can be read innocently — the case never goes to a jury. Only if the answer is no — i.e., the statement cannot reasonably be read innocently — does the case proceed. That is, a jury will only be allowed to decide whether a statement was actually innocent or defamatory if the court has already decided as a matter of law that the statement cannot reasonably be read innocently. Chapski, 92 Ill. 2d at 352. No jury finding in favor of a defendant should be allowed to stand, given that for the case to get to the jury, the court must already have found as a matter of law that the statement cannot reasonably be read innocently. As plaintiff notes in his brief, commentators have described this flaw in the rule for decades. Shortly after Chapski, commentators noted: “The primary flaw in the innocent construction rule is its illogical method for determining which statements are to be nonactionable as a matter of law and which are to be sent to a jury. Under the rule as applied in John, allegedly defamatory words capable of being read innocently must be so read and declared nonactionable by the judge as a matter of law. Therefore, only those statements which the court determines are incapable of any innocent construction are to be sent to the jury for a determination of whether they were understood to be defamatory. Under this procedure, however, if a judge determines that no innocent construction exists, there is nothing left for the jury to determine. In theory, though apparently not in actual practice, the plaintiff should then be entitled to judgment as a matter of law. Alternatively, the judge should be compelled to enter a directed judgment or judgment notwithstanding the verdict if the issue is submitted to the jury and the jury determines otherwise.” L. Malone & R. Smolla, The Future of Defamation in Illinois after Colson v. Stieg and Chapski v. Copley Press, Inc., 32 DePaul L. Rev. 219, 277 (1983). The same fact was observed just prior to Chapski: “[T]here should never he a jury trial in Illinois on the nature of the words. For, if the words are reasonably capable of innocent meaning, the trial judge should dismiss the case. The only other kind of case will be a situation in which the words are not capable of any reasonably innocent meaning. Therefore, the trial judge should enter a judgment for the plaintiff, at least on the meaning of the words, because no reasonable jury by definition could ever find the words to be innocent.” M. Polelle, The Guilt of the “Innocent Construction Rule” in Illinois Defamation Law, 1 N. Ill. U. L. Rev. 181, 214 (1981). Indeed, commentators have been making the same observation since John: “If literally applied, [the innocent construction rule] would seem practically to eliminate the jury from the determination of the defamatory quality of ambiguous language. If the words are capable of an innocent construction, the defendant is entitled to a directed verdict. If there is no innocent construction that can be derived from the publication then there is no question of fact as to its defamatory character, and it should be declared defamatory as a matter of law. Either way there would be no question to be submitted to the jury.” 30 U. Chi. L. Rev. at 531. See also R. Smolla, Law of Defamation 2d §4.22, at 4 — 38.8 (1999) (noting that the innocent construction rule, “which is often internally contradictory, confusing, and on the whole significantly biased in favor of defendants, has produced some bizarre results, and has come in for substantial criticism”). The majority suggests that we answered this objection in Chapski. See 224 Ill. 2d at 509. I respectfully disagree. In Chapski we never professed to address the argument that the rule did away with the jury’s role. It is not clear the argument was even raised in the case, despite the objection having been voiced by commentators since the rule’s inception. To the contrary, the only argument against the rule which we acknowledged in Chapski was that when applying it, courts failed to interpret statements reasonably. Chapski, 92 Ill. 2d at 350-51. Moreover, even if the argument was raised in Chapski and rejected sub silentio, the response is that then, as now, a majority of this court failed to come to grips with the heart of the objection. To say that the case goes to the jury if it has not been dismissed is technically true, but the point of the objection is that once a case has survived dismissal under the innocent construction rule there is nothing left for the jury to decide, because the court must already have ruled as a matter of law that it would be unreasonable to interpret the statements as anything but defamatory. Plaintiff also argues that the rule is inconsistent with the standards we otherwise apply at the dismissal stage. Again, plaintiffs point is well-taken. As the majority correctly summarizes, at the dismissal stage “[A] 11 well-pleaded facts and reasonable inferences that can be drawn from those facts are accepted as true.” Moreover, “[t]he court is to interpret the allegations in the complaint in the light most favorable to the plaintiff,” dismissing the cause of action only if “it is clear that no set of facts can be proved under the pleadings that would entitle the plaintiff to recover.” 224 Ill. 2d at 509-10. The majority reasons that the innocent construction rule is consistent with these principles because although “the court must accept as true the facts alleged in the complaint,” the court “is not, however, required to accept the plaintiffs interpretation of the disputed statement as defamatory per se. The meaning of the disputed statement is not a fact that can be alleged and accepted as true.” (Emphasis in original.) 224 Ill. 2d at 510. Rather, the court “ ‘give[s] the allegedly defamatory words their natural and obvious meaning’ and interprets them ‘as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader.’ ” 224 Ill. 2d at 510, quoting Bryson, 174 Ill. 2d at 93. This recitation of the rules ordinarily applicable at the dismissal stage and what occurs pursuant to the innocent construction rule seems to me sufficient to demonstrate the incompatibility to which plaintiff directs our attention. I agree with the majority that it would be inappropriate to treat the plaintiffs interpretation of a statement as a fact which must be assumed to be true. However, if the meaning of a statement is not a “fact” to be “alleged,” then how is the trial court to arrive at a conclusion regarding the statement’s meaning? Clearly, the court must interpret the statement, inferring its meaning from the context in which it was made. And thus, by the rules the majority cites, any doubt regarding the statement’s meaning should be resolved in plaintiffs favor. See 224 Ill. 2d at 509-10 (“All well-pleaded facts and reasonable inferences that can be drawn from those facts are accepted as true. [Citation.] The court is to interpret the allegations in the complaint in the light most favorable to the plaintiff’ (emphases added)). But under the innocent construction rule, no preference is given for that interpretation of the statement which supports plaintiffs complaint. To the contrary, any doubt about the statement’s meaning is resolved in the defendant’s favor because if the defendant’s interpretation of the statement is reasonable, the case is dismissed. This is not an appropriate standard at the dismissal stage. To say it another way, the innocent construction rule comes into play when there are two reasonable ways in which a statement could be interpreted, one of which is defamatory and one of which is not. In such a situation, the court is required to dismiss the action rather than allowing the case to go to the jury. This is clearly different than all other civil actions, in which, at the dismissal stage, if there are two reasonable ways to resolve a factual dispute, one favoring plaintiff and the other favoring defendant, the court must deny the motion to dismiss, sending the case to the jury to resolve the factual dispute. The majority’s statement that the rule does not require a court to “construe the factual allegations in the light most favorable to the defendant” is, again, technically true but misses the thrust of the argument. A court does not have to draw inferences in the defendant’s favor, because according to the innocent construction rule, the entire case must be decided in defendant’s favor as a matter of law if the defendant’s position is even reasonable. Plaintiffs point is that in all cases except defamation, the question at the dismissal stage is, Is it reasonably possible that the plaintiff will be able to prove his case? If so, the case must proceed. In defamation, by contrast, the question is, Is it reasonably possible that the plaintiff’s case could fail? If so, the case must be dismissed without the plaintiff ever having the opportunity to put his case before a jury of his peers. By contrast, the reasonable construction rule suffers none of these defects. Application of the reasonable construction rule requires a court at the dismissal stage to determine whether there is any reasonable way to interpret the statement in a defamatory manner. If the statement can reasonably be so interpreted, the case proceeds, and the jury must ultimately determine if the statement was actually defamatory. Only if it is not reasonably possible to interpret the statement as defamatory is the case dismissed. 224 Ill. 2d at 506-07; see also James v. Gannett Co., 40 N.Y.2d 415, 419, 353 N.E.2d 834, 837-38, 386 N.Y.S.2d 871, 874 (1976). This rule comports with our normal rules applicable at the dismissal stage, and leaves a question for the jury to decide if the case does actually go to the jury. I believe that these inherent flaws in the rule constitute another sufficient reason to abandon it despite stare decisis. See Sharpe, 216 Ill. 2d at 519; Jones, 207 Ill. 2d at 134 (good cause to overrule a prior decision exists when the prior decision is unworkable or badly reasoned). I see no indication that this court has ever considered these deficiencies in the rule. We certainly did not do so in John, where we adopted the rule in dictum in one paragraph with no analysis, nor did we do so in Chapski, where the only challenge we addressed was the fact that courts applying the rule interpreted statements unreasonably, nor in any other decision applying the rule. The rule is badly reasoned and illogical, and should be done away with for this reason alone, let alone the fact that it is also badly out of step with evolving defamation and first amendment jurisprudence. Another virtue of the reasonable construction rule is that it is followed by the vast majority of jurisdictions. The Restatement and Dobbs both state simply that it is the judge’s function to determine whether the words are capable of being understood as defamatory, and the jury determines whether they were actually defamatory. Restatement (Second) of Torts §614, at 311 (1977); 2 D. Dobbs, Torts §404, at 1131 (2001). Neither even mentions another approach. A leading treatise says that the reasonable construction rule has been adopted by “every jurisdiction in the United States save Illinois.” R. Smolla, Law of Defamation 2d §4.21, at 4 — 38.5 (1999). But see R Sack, Sack on Defamation §2.4.14, at 2 — 62-2—63 (3d ed. rev. 2004) (innocent construction rule is the law not only in Illinois but also in “Ohio and, perhaps, in Missouri, New Mexico, and Montana”). Some jurisdictions, such as New York, appear always to have followed the reasonable construction rule (see, e.g., James, 40 N.Y.2d at 419, 353 N.E.2d at 837-38, 386 N.Y.S.2d at 874), while others, such as California, once followed the innocent construction rule but abandoned it in favor of the reasonable construction rule (MacLeod v. Tribune Publishing Co., 52 Cal. 2d 536, 343 P. 2d 36 (1959)). I would not necessarily find our uniqueness alone to be sufficient reason to abandon our prior precedent. I believe it is no vice to hold fast to a well-reasoned rule, even if other jurisdictions do not agree. But in this case, I believe the rule Illinois follows is not well reasoned, and its almost universal rejection by our sister states tends to support that view. Finally, I note that the innocent construction rule has been fraught with inconsistency since its inception. Our modification of the rule in Chapski provides one example of this, of course. Moreover, despite this court’s express statement in Chapski that our holding there “modified” the rule as announced in John, we have been inconsistent about whether Chapski did in fact modify the rule. Compare, e.g., Bryson, 174 Ill. 2d at 93 (parenthetically characterizing Chapski as “modifying” John), with Anderson v. Vanden Dorpel, 172 Ill. 2d 399, 416 (1996) (“ ‘it is hardly tenable that prior to Chapski an innocent construction could be unreasonable. In short, a reasonable innocent construction was always the mandate of John v. Tribune Co. and was applied in the numerous defamation cases which are John’s progeny’ ” (emphases in original)), quoting Harris Trust & Savings Bank v. Phillips, 154 Ill. App. 3d 574, 581 (1987). Yet another apparent inconsistency may be observed within the instant case. The majority cites approvingly the holding in Mittelman that we do not “balance” differing constructions of the statement at issue. See 224 Ill. 2d at 504, citing Mittelman, 135 Ill. 2d at 232. Yet in applying the rule in this case the majority “conclude[s] that a defamatory construction is far more reasonable than any innocent construction.” (Emphasis added.) 224 Ill. 2d at 515. The innocent construction rule was adopted, in dictum, at a time when defamation was a strict liability cause of action, with little protection for the speaker. Since then, not only has strict liability been entirely repudiated, but defamation law has become increasingly complex, taking into account the status of both parties involved as well as the nature of the speech at issue. But the innocent construction rule has remained unchanged, a simple blanket layer of protection for defendants no matter what the circumstance. Moreover, even if the law had not changed, the rule has from its inception been logically flawed and inconsistent with our general rules concerning motions to dismiss. It has been repudiated by all, or nearly all, other jurisdictions in the country. Further, this court has had to amend the rule in the past, and continues to apply it inconsistently. For all these reasons, in this case, I believe that stare decisis should yield, and the innocent construction rule should at long last be consigned to its rightful place in the scrap heap of Illinois legal history. Accordingly, I respectfully dissent from this portion of the majority opinion. However, I agree with the result reached by the majority. For if we were to adopt the reasonable construction rule, as I advocate, I would conclude that it is reasonably possible to interpret the statements at issue in a defamatory fashion. Thus according to that rule the appropriate resolution of this case would be to reverse and remand for further proceedings, the same result the majority reaches through its application of the innocent construction rule. Accordingly, I concur in the majority’s result.